558 F.Supp. 545 (1983)
Robert and Mary YARIS, et al., Plaintiffs,
v.
SPECIAL SCHOOL DISTRICT OF ST. LOUIS COUNTY, et al., Defendants.
No. 81-423C(2).
United States District Court, E.D. Missouri, E.D.
March 2, 1983.
*546 Kenneth M. Chackes, Michael J. Hoare, St. Louis, Mo., for plaintiffs.
Jerry Short, Leslie Ann Schneider, Asst. Attys. Gen., Jefferson City, Mo., Ramon J. Morganstern, Clayton, Mo., for defendants.

MEMORANDUM
NANGLE, District Judge.
This is a class action lawsuit to redress alleged deprivation of rights under the Education For All Handicapped Children Act, 20 U.S.C. §§ 1401 et seq.; Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794; 42 U.S.C. § 1983, the Equal Protection and Due Process Clauses of the Fourteenth Amendment; the Missouri Constitution, and Mo.Rev.Stat. §§ 162.670 et seq.[1] This court's jurisdiction is invoked *547 pursuant to 20 U.S.C. § 1415(e), 28 U.S.C. § 1331, and 28 U.S.C. § 1343. The named plaintiffs instituted this suit to secure declaratory and injunctive relief against the continued application of the defendants' policy, which precludes the provision of educational programs for handicapped children in excess of the traditional 9 month school year. Furthermore, plaintiffs seek a mandatory injunction compelling defendants to make available to the named plaintiffs an educational program that extends beyond 9 months. Plaintiffs allege that defendants have a policy against considering or providing handicapped children with educational services beyond the regular 9 month term, and therefore defendants are not meeting their obligations under applicable federal and state statutes.
This case was tried to the court sitting without a jury. The court having considered the pleadings, the testimony of the witnesses, the documents in evidence, and the stipulations of the parties, and being fully advised in the premises, hereby makes the following findings of fact and conclusions of law, as required by Rule 52 of the Federal Rules of Civil Procedure.

FINDINGS OF FACT
1. Plaintiff Michael Yaris, born February 26, 1971, is a handicapped child who resides with his parents, plaintiffs Robert and Mary Yaris in University City, St. Louis County, Missouri. Robert and Mary Yaris have been authorized in this litigation to serve as next friends of their son Michael.
2. Plaintiff Adam Stubbs, born December 9, 1974, is a handicapped child, who resides with his parents, plaintiffs Stephen and Marilyn Stubbs, in Independence, Missouri. Stephen and Marilyn Stubbs have been authorized in this litigation to serve as next friends of their son Adam.
3. Plaintiff Missouri Development Disabilities and Advocacy Services, Inc. (hereinafter "Missouri P & A") is a not-for-profit corporation having its principle place of business in Jefferson City, Missouri. Pursuant to the Developmental Disabilities Act, 42 U.S.C. §§ 6001, et seq., Missouri P & A is the agency within the State of Missouri charged with the responsibility of advocating for the rights, including educational rights, of persons in the State of Missouri who are developmentally disabled. Funding for Missouri P & A is provided by the Developmental Disabilities Office of the United States Department of Health and Human Services.
4. Defendant Special School District of St. Louis County (hereinafter "SSD") is a body corporate and political subdivision of the State of Missouri and may be sued in its own name. This defendant, among other things, operates schools for the education of the handicapped throughout St. Louis County, Missouri. Said defendant is a recipient of federal financial assistance, including assistance under the Education For All Handicapped Children Act of 1975, 20 U.S.C. §§ 1401, et seq., (P.L. 94-142).
5. Defendant Department of Elementary and Secondary Education (hereinafter "DESE") is a department of the executive branch of the State of Missouri. DESE is responsible under the Education For All Handicapped Children Act of 1975, 20 U.S.C. §§ 1401, et seq., for ensuring that all handicapped children in Missouri receive a free and appropriate public education. As part of that responsibility, DESE supervises all local school districts and other state agencies in their provision of a free and appropriate public education to Missouri handicapped children. DESE also is responsible for establishing procedural safeguards *548 to assure that such an education is provided. The duties of DESE include supervision over the distribution of state and federal funds to local school districts for use in the education of handicapped children. DESE is responsible under Missouri law for assuring that all handicapped children within the State of Missouri are provided access to special educational services. DESE is a recipient of federal financial assistance for the education of handicapped children; the department receives funds under the Education For All Handicapped Children Act of 1975, 20 U.S.C. §§ 1401, et seq.
6. Defendant State Board of Education was created by the Missouri Constitution, Article 9, Section 2(a). The Board is required to carry out the educational policies of the State of Missouri relating to public schools that are provided by law and to supervise instruction in the public schools.
7. Defendant Arthur L. Mallory is the Commissioner of Education of the State of Missouri, a position established by the Missouri Constitution. Defendant Mallory is the chief administrative officer of the State Board of Education and has supervisory authority over the DESE.
8. Defendant Leonard W. Hall is the Assistant Commissioner for the Division of Special Education of the DESE. Dr. Hall's duties and responsibilities include supervision of the operation of all state schools for handicapped children and the monitoring of all special education programs operated by local school districts to assure compliance with federal and state laws pertaining to education for the handicapped.
9. By order of this court dated December 30, 1982, the named plaintiffs in this action, the Yarises, the Stubbs, and Missouri P & A, were authorized to proceed against the state defendants, Arthur L. Mallory, Leonard W. Hall, State Board of Education and DESE, as representatives of a class defined as follows:
All handicapped school-aged persons in the State of Missouri who require or may require or benefit from an educational program in excess of the traditional nine-month school year and with no extended break in programming, and the parents or guardians of such persons.
In addition, the Yaris plaintiffs and Missouri P & A also were authorized to proceed against defendant SSD as representatives of a subclass defined as follows:
All handicapped school-aged persons which defendant Special School District of St. Louis County is obligated to serve who require or may require an educational program in excess of the traditional nine-months school year and with no extended break in programming, and the parents or guardians of such persons.
Prior to trial, the parties entered into a joint stipulation respecting class certification which allowed for the alteration or amendment of the class "before the decision on the merits if it appears to the court from the evidence adduced at the hearing on the merits that the class described herein is too broad and should be more narrowly defined." In the order of December 30, 1982 this court authorized the certification of the class herein described, concluding that the definition of the class is not too broad because the determination of the content of a handicapped child's educational program must be made on an individual basis by school officials and parents.
10. State records indicate that there are approximately 126,000 handicapped children in Missouri, 95,000 of which are provided public special educational services. Of those 95,000 handicapped children, approximately 78,000 children are educated by their local school districts, approximately 14,000 are educated by special school districts, and approximately 3,000 are educated directly by the State.
11. The DESE classifies handicapped children by handicapping condition. The approximate number of children in each classification is set out below:
a) Blind  300
b) Partial Seeing  900
c) Deaf  800
d) Hard of Hearing  2,400
e) Speech Impaired  39,000
f) Educable Mentally Retarded  25,000

*549 g) Trainable Mentally Retarded  3,000
h) Profoundly Mentally Retarded  1,100
i) Behavior Disordered  8,400
j) Learning Disabled  44,000
k) Orthopedically Handicapped  1,800
l) Other Health Impaired  3,000
m) Cerebral Palsy  700.
12. Handicapped children in the State of Missouri may be provided public special educational services by any one of the following agencies:
a) State of Missouri:
(1) DESE: 55 state schools for severely handicapped; Missouri School for the Deaf; and Missouri School for the Blind.
(2) Department of Mental Health.
(3) Division of Youth Services: children incarcerated under the supervision of the juvenile courts.
(4) Division of Corrections: children incarcerated under the adult criminal code.
b) Local school districts.
c) Special school districts.
d) Private agencies under contract with public agencies.
13. Other than those children served by the Divisions of Youth Services and Corrections as a result of their incarceration, handicapped children provided educational services directly by the State of Missouri have been classified as "severely handicapped" pursuant to Mo.Rev.Stat. § 162.675(3). The statute defines "severely handicapped children" as follows: "children under the age of twenty-one years who, because of the extent of the handicapping condition or conditions, as determined by competent professional evaluation are unable to benefit from or meaningfully participate in programs in the public schools for handicapped children. The term `severely handicapped' is not confined to a separate and specific category but pertains to the degree of disability which permeates a variety of handicapping conditions and education programs." Therefore, under Missouri law, a child will be classified as "severely handicapped" once the determination has been made that the child can not be served by the local school districts. In Missouri, approximately .05% of all handicapped children are classified as severely handicapped.
14. The State of Missouri, through the DESE, the Department of Mental Health, Division of Youth Services, Division of Corrections, and through private agencies under contract, provides public special educational programs for a school term of 180 days, which results in a summer break of 2 to 3 months.
15. The State of Missouri does not determine or consider on an individual basis whether handicapped children require or may require educational programming in excess of the traditional 9 month school year. Nor does the State, through the DESE require local and special school districts to determine on an individual basis whether handicapped children are in need of an educational program in excess of 180 days. In fact, there was testimony at trial establishing that the State of Missouri has an established practice of providing public special educational programs solely on a traditional 9 month basis. Mr. Hall testified at trial that hearing officers in the State of Missouri do not have the authority to require the provision of educational programming in excess of 180 days. Any decision to the contrary will be overturned automatically by reviewing state officials.
16. Defendant SSD provides special educational services to approximately 14,000 handicapped children. Unlike the State of Missouri, SSD contends that they do not have a policy or practice precluding consideration of a child's need for education beyond the traditional 180 day school year. Instead, the SSD argues that the named plaintiffs and other members of this class of handicapped children have not demonstrated need for an extended school year.
17. Currently, the SSD does not provide any type of educational services to handicapped children beyond the traditional 9 month school year. Although it might be possible to conclude that none of the children would require a program without any extended break, it is more than likely that *550 if full individual consideration had been given to each child's potential need for extended programming at least some of the children would have been found to require some type of educational service beyond the traditional 9 month school year. The fact that all of the children being served by the SSD were uniformly found to require only 180 days of programming indicated that the educational needs of the handicapped children were considered only in the context of the amount of schooling presently available to them. Furthermore, there is evidence in the record establishing that SSD administrators believed that they did not have the authority to provide school in excess of 180 days per year. Mr. Paul Dulle, the SSD's Assistant Superintendent for Behavior Disorders, Learning Disabilities and Learning Disorders, testified at the time of his deposition that there was "no provision in the Special School District to provide any programs beyond the calendar approved ... by the Board of Education each year." Therefore, in light of the evidence, it must be concluded that the SSD in fact does have a policy or practice of refusing to consider or provide for a mentally retarded child's educational needs beyond the traditional 9 month school year.
18. Summer school is provided to children in Missouri at the option of local school districts. Some local school districts have made summer programs available to handicapped children. However, none of these programs are available for those children who have been designated as "severely handicapped" under Missouri law, and who are enrolled in the state schools for the severely handicapped.
19. Local school districts receive funds for summer school programming either through the school foundation formula provided in Mo.Rev.Stat. § 163.011(2), or under Title 1 of the Elementary and Secondary Education Act of 1965, or from both sources. Of the money appropriated by the legislature to the DESE for local schools, expenditures are first provided for transportation aid and exceptional pupil aid. The remainder, which is the substantial majority of the total appropriation, is divided among local school districts, including special school districts pursuant to the foundation formula, based primarily on pupil attendance. Mo.Rev.Stat. §§ 162.975-162.990. Additional state funds for the education of handicapped children are provided to local and special school districts apart from the funds provided under the foundation formula. However, state aid for the education of the handicapped, in the form of funds provided by class, staff members and staff aid, is limited to a "term of one hundred eighty days" by Missouri State law. Mo.Rev.Stat. § 162.975.
20. The state defendants confess that it is their policy and practice to refuse to provide or to fund educational programming for any severely handicapped child enrolled in the schools of the State Board of Education or served by the Board in excess of 180 calendar days per year. It has been established that summer school programming may be provided at the discretion of local educational agencies for handicapped or non-handicapped children; these districts receive funds under the foundation formula. However, funds available to local agencies during the normal school year for the purposes of educating the handicapped are not available during the summer break. The fact that the provision or non-provision of summer programming for handicapped or non-handicapped children is an option of the local school district, does not change this court's conclusion that the fiscal policies of the State of Missouri allow for the provision of services to the non-handicapped children during the summer months and do not allow for the provision of programming for the severely handicapped. Furthermore, in the event a local district wishes to provide handicapped children with education beyond the traditional 180 days, the local agency must bear the additional cost. The responsibility for this financial burden may very well deter a local school district from considering the needs of handicapped children for school in excess of 180 days. Therefore, although the state defendants' policy toward summer programming of children in Missouri is perhaps neutral on its *551 face, it has the effect of providing services to non-handicapped children, which are denied to the handicapped and severely handicapped.
21. At trial, the plaintiffs presented evidence in support of their contention that handicapped children suffer educational regression during interruptions in programming which can have a substantial impact on their progress and on their potential for achieving any degree of independence. In support of this conclusion plaintiffs' expert witnesses testified that regression resulting from breaks in educational programming can result in the actual loss of skills previously required, or a lack of motivation to perform skills that a child retained. Furthermore, it was contended that regression can result in an increase in inappropriate behaviors and can affect motor and communication skills. One of the plaintiffs' leading expert witnesses, Lou Brown, who is a professor of special education at the University of Wisconsin, testified that limiting every handicapped child's education to the traditional 9 month school year deprives certain handicapped children of the opportunity to experience an appropriate education. Dr. Brown emphasized that not all handicapped children are in need of additional services; however, he stressed that this determination must be made on an individual basis. Dr. Brown identified certain learning characteristics of the severely handicapped which make it more likely that they will regress than the normal child. Dr. Brown stated that the severely handicapped are capable of learning fewer and lesser complicated skills. Furthermore, the handicapped have a greater difficulty acquiring skills and are likely to lose a greater number of skills over time. Finally, it is difficult for them to transfer what they have learned. Dr. Brown also identified a number of variables that parents and educators should consider when determining whether a particular handicapped child should have educational programming in excess of the traditional school year. He suggested that the child's progress, behavioral and physical problems must be examined. In addition, the Doctor stated that the availability of alternative resources, the ability of a handicapped child to interact with non-handicapped children, the areas of the child's curriculum which need continuous attention, the degree of regression suffered by the child, and a child's vocational needs should all play a role in the determination of whether extended programming was appropriate, and if appropriate, the types of services that should be provided to the child. Finally, the Doctor stressed that economic concerns should also be taken into account; one of the goals for handicapped children is to allow them to become contributing members of society as opposed to dependent institutionalized adults.
22. Plaintiffs' witnesses in general agreed that a continuous program of education, without extended breaks, would lessen the likelihood of regression in certain handicapped children. However, each of the plaintiffs' experts stressed that the determination of whether extended programming was necessary should be made on an individual basis. Dr. H.D. Bud Fredericks, who is a research professor and associate director of teaching research, a division of the Oregon state system of higher education, suggested a means of identifying both the children who are in need of extended programming and the type of services that would be appropriate for these children. He testified that school officials should evaluate a child's progress in each area of the curriculum, and the regression that occurs in each area after a break. He further testified that those children who show significant regression and require over a month to recoup skills should be considered for summer programming.
23. In addition to the expert testimony, plaintiffs presented further testimony seeking to establish the existence of regression in specific children. Michael Yaris, one of the named plaintiffs in this action, is an 11 year old autistic child with a severe language problem, a severe behavior disorder, and functional retardation. He has been evaluated by the SSD as behaviorally disordered, communication impaired and functionally, intellectually and academically retarded. *552 Michael has attended the Judevine Center for Autistic Children, except for a 6 month period, since October of 1975 when he was 4 years old. Since he has attended this Center he has had continuous programming except for 3 exceptions when he took a break of a month or more. Michael's father testified that Michael's behavior deteriorated significantly during these breaks and that it took him a sizeable length of time to recoup his skills. Rebecca Blackwell, Director of the Judevine Center, also testified that Michael suffered regression as a result of these breaks. She stated that Michael suffered from severe withdrawal, increased restlessness, aggressiveness, and inappropriate behaviors after these breaks. She contended that the return of his behavior difficulties severely impeded Michael's academic progress. She concluded that extended programming for Michael was appropriate because of his inability to deal with an unstructured environment.
24. Adam Stubbs is a 7 year old severely mentally and physically retarded, hyperactive, epileptic child with severe delays in language and speech development and autistic behaviors. After the determination was made that Adam was "severely retarded," the DESE contracted with the Sherwood Center for Exceptional Children, Inc., in Kansas City, Missouri, to provide Adam with a special education program for the 1980-81 and 1981-82 school years. The State agreed to provide funding for Adam for the traditional 9 month school year; nonetheless, Adam attends the Sherwood Center year round with a minimal number of 2 week breaks. Marilyn Stubbs testified that by the end of a 2 week break Adam resorts to extensive crying, tantruming, and head banging. Deborah Wood, Director at the Sherwood Center testified that the regression that Adam would experience during a 3 month break could severely jeopardize his potential for learning skills or achieving any degree of independence. Ms. Wood further testified that she has been told by the DESE to strike any reference to summer programming when applying for State funds.
25. The defendants also produced a considerable amount of evidence on the question of regression, including testimony by experts and teachers and aides who work in the SSD schools. Through this testimony, the defendants sought to establish that handicapped children did not regress during a summer break. In fact, the defendants contended at trial that many of the children studied actually showed progress in certain areas after breaks. The defendants advanced a number of different theories in support of their assertion that summer vacations are advantageous to handicapped children. The first theory advanced is that handicapped children need a break from a structural environment in order to be motivated to continue learning. Second, the defendants assert that summer vacations allow handicapped children an opportunity to obtain a valuable informal education not available in the structured environment of the school. Finally, the defendants theorized that the summer break affords these children an opportunity to transfer skills learned in the academic environment to the home environment.
26. In support of their general theory that handicapped children do not suffer regression over extended breaks and in fact can benefit from a break, the defendants presented the expert testimony of Dr. Keith Turner, an associate professor in the field of special education at the University of Texas at Austin. Dr. Turner has testified in several cases involving the issue of handicapped children and their need for extended programming.[2] Dr. Turner testified that he was of the opinion that an extended school year is generally unnecessary for handicapped children; he based his opinion on a study he conducted in Savannah, Georgia in the years 1979 and 1980 with 3 classes of severely and profoundly retarded children. Dr. Turner's methodology consisted of administering the portage checklist to *553 these children both before and after a summer break and several times during the following year for the purposes of determining whether there was regression over the break and determining the recoupment periods after the break. The portage consists of at least 500 skills that the children must perform. Dr. Turner presented evidence showing the total number of skills that each child could perform before and after the summer break; his data showed that only 1 handicapped child had a lower total score after the break.
27. The portage checklist is regularly used as a teaching tool and is administered to students with a developmental age of up to 6 years. The purpose of the test is to determine the skills a particular child has and what skills a child should be taught. The test was not designed to measure a child's developmental age. In fact many of the items on the checklist were not part of the particular child's curriculum and therefore are not determinative of the question whether the child was progressing or regressing in school. Furthermore, the checklist did not contain many of the items on the children's curriculum at school. Therefore this court must conclude, as the court concluded in Georgia Ass'n of Retarded Citizens v. McDaniel, that the portage checklist is of doubtful probative value on the question of whether or not handicapped children regress after an extended break from programming. 511 F.Supp. 1263, 1274 (N.D.Ga.1981).
28. Despite the general contention of the defendants that handicapped children do not suffer regression during extended breaks, the majority of their witnesses testified summer programming would be appropriate for certain handicapped children and might improve their rate of retention. Furthermore, it was stressed that this determination must be made on an individual basis.
29. On the basis of the record and the evidence presented at trial, this court must conclude that as a general proposition handicapped children do regress after an extended break. The extent of the regression and the recoupment problems resulting from a break in programming can only be determined by examining the individual child and determining whether the child is in need of an environment which is more structured than his parents can provide at home.
30. In addition to presenting evidence on the issues of regression and extended programming, the plaintiffs Robert and Mary Yaris presented evidence on the questions raised by their individual action on behalf of their son, against the SSD in Count I of the first amended complaint. Plaintiffs Robert and Mary Yaris contend that the defendant failed to implement an educational program for their son Michael in a timely manner, and also failed to pay for the costs incurred in the administrative due process proceeding. Therefore the Yarises brought this claim to recover both the costs of the transcript and record of the panel hearing and for providing an education for Michael from April, 1979 through August of 1980. They claim that they are entitled to recover the following expenditures: Judevine Center for Autistic Children, April, 1979 through August, 1980, $200.00 per month ($3,400.00); Learning Consultants, Inc., William Ferzacca, April, 1979 through May, 1979, $160.00; Nancy Newmeyer, attendance at the New City School and Affton afterschool programs, April, 1979 through August, 1980, $1,600.00; and transportation, April, 1979 through August, 1980, $1,566.00 (6,960 miles × .225). The total costs equal $6,286.00.
31. The SSD first evaluated Michael Yaris, at the request of his parents in the early part of 1979. At this time, Michael was diagnosed as behaviorally disordered, communication impaired, functionally, intellectually and academically retarded.
32. A conference for the development of an individualized education program (hereinafter "IEP") was conducted by the SSD for Michael Yaris on March 15, 1979; resulting in the recommendation that Michael be placed in the Bridgeton School classroom in March of 1979. There were several issues that remained unresolved after this *554 conference. Due to the Yarises' disagreement with the content of their son's IEP, they did not request the SSD to implement the program which it was willing to provide at that time. Instead, they asked the SSD to contract with the Judevine Center, which was the school Michael was attending at the time. The SSD scheduled a further conference in order to obtain additional information in an effort to reach an agreement about the appropriate placement for Michael.
33. By letter from their attorney dated May 29, 1979, Robert and Mary Yaris requested that the SSD conduct a hearing for the appeal of Michael's evaluation and IEP.
34. A second IEP conference was held on May 31, 1979 by the SSD for Michael Yaris. Again, the parties were unable to resolve all the issues with respect to Michael's IEP and therefore the Yarises requested an administrative review of the IEP as provided by Missouri law. The first step in the due process proceeding is an informal conference which was conducted by the SSD on July 18, 1974. At this conference, the Yaris plaintiffs and the SSD discussed the objections to the IEP and the SSD agreed to submit a proposed amendment to the May 31, 1979 IEP.
35. By letter dated August 1, 1979, the SSD informed Robert and Mary Yaris that it would not provide summer programming. In addition, the SSD submitted its amendment to the May 31, 1979 IEP.
36. By letter dated August 9, 1979, Robert and Mary Yaris requested of the SSD a due process hearing to appeal Michael's evaluation and the IEP. Missouri law provides for a formal hearing before a 3 member panel selected by the parties.
37. One week prior to the due process hearing, on January 22, 1980, through their respective attorneys, the Yarises and the SSD confirmed that all of the components of an IEP for Michael were agreed upon except for the issue of continuous programming.
38. The due process hearing was conducted by a 3 member panel pursuant to Missouri law on January 29 and 30 of 1980. The panel decision and a dissenting opinion were rendered on or about February 14, 1980. The decision was adverse to the Yarises.
39. The Yarises, through their counsel sent a letter dated February 13, 1980 to the SSD requesting implementation of Michael's IEP, as amended. The Yarises requested immediate implementation of a program which was consistent with Michael's IEP if such a program existed at that time. If an appropriate program was not available they requested enrollment as soon as possible. In the event enrollment had to be delayed, the Yarises requested a contractual arrangement with the Judevine Center. Finally, in their letter, the Yarises sought financial reimbursement for Michael's private programming from March 15, 1979 through January 22, 1980 on the ground that Michael's IEP proposals were inappropriate.
40. On February 15, 1980 the Yarises requested a review of the decision of the 3 member panel by the State Board of Education of the adverse panel level hearing decision.
41. By letter dated March 7, 1980 the Yarises requested that the SSD pay the costs of a copy of the transcript of the hearing before the 3 member panel and a copy of the complete record of the hearing for review by the State Board of Education. The SSD refused to pay for these costs.
42. On March 31, 1980 the Yarises sent to Dr. Leonard W. Hall, the hearing officer designed by the State Board of Education, a copy of the transcript and record of the panel hearing which the Yarises had obtained at their own expense in the amount of $388.70. By appealing the decision to the State Board of Education, Robert, Mary and Michael Yaris exhausted their administrative remedies under Public Law 94-142.
43. In response to the Yarises' request of February 13, 1980 to implement Michael's IEP of May 31, 1979, arrangements were made in April by the SSD to place Michael in its Gibson School classroom. On April 24, 1980, through their counsel, the *555 Yarises informed the SSD that they did not wish to enroll Michael in the program offered.
44. In the fall of 1980, the Yarises enrolled Michael in the SSD program. In April of 1981 Michael was removed by his parents from the SSD program and returned to the Judevine Center where he is attending presently and where he attended throughout the administrative proceedings. In accordance with the wishes of the plaintiffs, the SSD agreed to contract with the Judevine Center for Michael's program for the 1981-82 school year. Currently Michael's educational program is funded by the SSD except for services he received in the summer which is in part funded by contract with the Missouri Department of Mental Health. The Yarises pay the remainder of his costs for Michael's summer program.

CONCLUSIONS OF LAW
This court has jurisdiction of this case pursuant to 20 U.S.C. § 1415(e), 28 U.S.C. § 1331, and 28 U.S.C. § 1343. The named plaintiffs instituted this class action for the purpose of securing declaratory and injunctive relief against the continued application of the policy of the defendants, which precludes the provision of educational services for handicapped children in the State of Missouri in excess of the traditional 9 month school year. The plaintiffs contend that this policy violates the Education For All Handicapped Children Act, 20 U.S.C. §§ 1401 et seq.; Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794; 42 U.S.C. § 1983, the Equal Protection and Due Process Clauses of the Fourteenth Amendment; the Missouri Constitution, and Mo.Rev.Stat. §§ 162.670 et seq. In addition, the plaintiffs seek a mandatory injunction compelling defendants to make available to the named plaintiffs education programs which extend beyond the traditional 180 day school year.[3]

1. The 9 Month Policy and the Education For All Handicapped Children Act.
The Education For All Handicapped Children Act of 1975, 20 U.S.C. §§ 1401 et seq., provides state and local agencies with federal money to assist in the education of handicapped children. However, the provision of this money is conditioned upon a state's compliance with extensive goals and procedures outlined by Congress in the statute. In order to qualify for federal financial assistance under this Act, a state must demonstrate that it "has in effect a policy that assures all handicapped children the right to a free appropriate education." 20 U.S.C. § 1412(1). In order to ensure the provision of that right the Act further requires that each state develop a plan, 20 U.S.C. § 1412(2), establish procedural safeguards, 20 U.S.C. § 1412(5), and require local educational agencies to establish individualized educational programs. 20 U.S.C. § 1412(4). The plan must be approved by the Commissioner of Education before the State can acquire any assistance. 20 U.S.C. § 1413.
Section 1401(18) of the Act defines "free appropriate public education" as:
Special education and related services which (A) have been provided at public expense, under public supervision and direction, and without charge, (B) meet the standards of the state educational agency, (C) include an appropriate preschool, elementary, or secondary school education in the state involved, and (D) are provided in conformity with the individualized education program required under § 1414(a)(5) of this title.
The Act goes on to define "special education" as "specifically designed instruction, at no cost to parents or guardians, to meet the unique needs of a handicapped child, including classroom instruction, instruction in physical education, home instruction, and instruction in hospitals and institutions." 20 U.S.C. § 1401(16). "Related services" are defined as those services which "may be required to assist a handicapped child to *556 benefit from special education ..." 20 U.S.C. § 1401(17). Examples of these services are transportation, speech pathology, recreation, physical and occupational therapy, counseling services, psychological services, and medical services necessary for diagnosis and evaluation. Most importantly, "[t]he `free appropriate education' required by the Act is tailored to the unique needs of the handicapped child by means of an `individualized educational program' (IEP) § 1401(18)." Board of Education of the Hendrick Hudson Central School District v. Rowley, ___ U.S. ___, 102 S.Ct. 3034, 3038, 73 L.Ed.2d 690 (1982). The IEP is a
written statement for each handicapped child developed in any meeting by a representative of the local educational agency or an intermediate educational unit who shall be qualified to provide, or supervise the provision of, specially designed instruction to meet the unique needs of handicapped children, the teacher, the parents or guardians of such child, which statement shall include (A) a statement of the present levels of educational performance of such child, (B) a statement of annual goals, including short-term instructional objectives, (C) a statement of the specific educational services to be provided to such child, and the extent to which such child will be able to participate in regular educational programs, (D) the projected date for initiation and anticipated duration of such services, and (E) appropriate objective criteria and evaluation procedures and schedules for determining, on at least an annual basis, whether institutional objectives are being achieved.
Section 1414(a)(5) of the Act requires the state to establish procedures whereby the IEP is revised by the local educational agency at least annually.
In addition to requiring the state to provide handicapped children with a "free appropriate education", the Act also imposes procedural requirements on the states to assure that the IEP is appropriately formulated to the unique needs of the specific child. Parents or guardians of handicapped children must be notified whenever the local agency proposes to make a change in "the identification, evaluation, or educational placement of the child or the provision of a free appropriate public education to the child," and must be allowed to bring a complaint about "any matter relating to such evaluation and education." 20 U.S.C. § 1415(b)(1). The Act entitles the parent or guardian to a due process hearing whenever such a complaint is made, and appeal to the state educational agency is required in the event the initial hearing is held at the local or regional level. 20 U.S.C. §§ 1415(b)(2) and (c). Finally, "any party aggrieved by the findings and decision" may appeal to a state court of competent jurisdiction or to a district court of the United States. 20 U.S.C. § 1415(e)(2).
It is clear from the substantive and procedural provisions found in the Education For All Handicapped Children Act, that the fundamental requirement rests in the mandate that the state have in effect a policy that assures handicapped children the right to a "free appropriate education." 20 U.S.C. § 1412(1). Therefore, the major issue raised by the plaintiffs' complaint is whether a policy that prohibits the consideration of a handicapped child's educational needs in excess of the traditional 9 month school year contravenes the responsibility of the state to provide handicapped children with a "free appropriate public education." In order to resolve this issue, an effort must be made to define the Act's requirement of a "free appropriate public education."[4]
*557 In Board of Education of the Hendrick Hudson Central School District v. Rowley, the Supreme Court for the first time was called upon to interpret provisions of the Education For All Handicapped Children Act. In this opinion the Court explicitly addressed the question of "what is meant by the Act's requirement for `free appropriate education'?" The Court concluded that "the `basic floor of opportunity' provided by the Act consists of access to specialized instruction and related services which are individually designed to provide educational benefit to the handicapped child." 102 S.Ct. at 3048. While recognizing that the determination of whether a particular handicapped child is receiving sufficient services to satisfy the requirements of the statute presents a more complex problem, the court presented a standard to aid in making that determination. A state satisfies the requirement that it provide a handicapped child with a "free appropriate public education" by "providing personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction. Such instruction and services must be provided at public expense, must meet the State's educational standards, must approximate the grade level used in the State's regular education, and must comport with the child's IEP." Id. 102 S.Ct. at 3049.
In an effort to lend meaning to the general standards of compliance prescribed by the Supreme Court in Rowley, and to apply those standards to the facts of the present case, it is necessary to examine the analysis which lies behind the Court's decision. There are three major aspects of the opinion that will be considered prior to determining whether the State of Missouri is meeting its obligation under the Act by providing handicapped children with a "free appropriate education," which requires that these children have "access to specialized instruction and related services which are individually designed to provide educational benefit to the handicapped child." Id. 102 S.Ct. at 3048. First, there will be an examination of the standard for determining whether a particular child is receiving adequate services; second, there will be a consideration of the court's emphasis upon the individual needs of the child; and finally, the state's role in the administration and development of educational programs will be examined, as will the implications it has for relief in the context of this case.
In its decision, the Supreme Court clearly recognized that the "determination of when handicapped children are receiving sufficient education benefits to satisfy the requirements of the Act" must be made on an individual basis. Id. 102 S.Ct. at 3049. In recognition of this fact the Court found it *558 necessary to limit its opinion in the following manner:
We do not attempt today to establish any one test for determining the adequacy of educational benefits conferred upon all children covered by the Act. Because in this case we are presented with a handicapped child who is receiving substantial specialized instruction and related services, and who is performing above average in the regular classrooms of a public school system, we confine our analysis to that situation.[5]
Id. In contrast, to the situation presented to the Court in Rowley, the class of handicapped children in Missouri are receiving fewer educational services than those non-handicapped children for whom summer school is available. There is evidence in the Rowley opinion that the Supreme Court anticipated that state administrators most likely could be obligated to provide handicapped children more services than those provided to children without handicaps, in order to comply with the statutory requirement of "free appropriate education."[6] However, more importantly, the standard outlined by the Court to determine whether Amy was receiving an adequate education under the Act, requires state educators to provide children with "personalized instruction", provided at public expense, and comporting with the child's IEP. Id. 102 S.Ct. at 3044. Therefore, in order to meet the requirement of a "free appropriate education" at the very least, educators must examine the individual needs of a child in order to determine whether there are "sufficient support services to permit the child to benefit educationally from that instruction." Id.
In addition to concluding that no one test exists for determining the adequacy of educational services conferred on handicapped children, the Supreme Court stressed in Rowley that state educators are required "to adopt procedures which would result in individualized consideration of instruction for each child" in order to satisfy the requirements of that Act. Id. 102 S.Ct. at 3042. The obligation of providing handicapped children with educational programs, designed in accordance with the unique needs of each child, is reflected in the requirement of the IEP. The IEP guarantees the handicapped child, procedurally and substantively, a free appropriate education. Therefore, any policy which inhibits the consideration of the individual educational needs of handicapped children necessarily conflicts with the Act's emphasis on the individual needs of the children and requirement of an IEP.
The final aspect of the Rowley decision that must be examined before applying the standards to the facts presented by this case, is the role which the state plays in the administration of public education to handicapped children under the Education For *559 All Handicapped Children Act. At the same time that the Supreme Court recognized that the Act imposes extensive procedural and substantive obligations on the states, it also noted that "the Act leaves to the states the primary responsibility for developing and executing programs for handicapped children." Id. 102 S.Ct. at 3039. However, states are obligated to meet the "basic floor of opportunity" embodied in the Act, id. 102 S.Ct. at 3048, and to provide handicapped children with equal access to educational services. The Court went on to anticipate the problem posed by insufficient funds:
If sufficient funds are not available to finance all of the services and programs that are needed and desirable in the system then the available funds must be expended equitably in such a manner that no child is entirely excluded from a publicly supported education consistent with the needs and ability to benefit therefrom. The inadequacies of the ... Public School System whether occasioned by insufficient funding or administrative inefficiency, certainly cannot be permitted to bear more heavily on the `exceptional' or handicapped child than on the normal child.
Id. 102 S.Ct. at 3044 N. 15, citing Mills v. Board of Education of the District of Columbia, 348 F.Supp. 866, 876 (D.C.D.C.1972). Therefore, inadequacy of funds does not relieve a state of its obligation to assure the handicapped child of equal access. Id. 102 S.Ct. at 3047.
In view of the principles enunciated by the Supreme Court in Rowley, it is the conclusion of this court that the State of Missouri's policy of refusing to consider or provide more than 180 days of education for the severely handicapped is incompatible with the Act and the standards enunciated by the Supreme Court. Unlike the factual situation presented to the Court in Rowley, the plaintiffs in this action are receiving fewer services than non-handicapped children. Furthermore, the policy of the State of Missouri precludes "individualized consideration of and instruction for each child." Id. 102 S.Ct. at 3042. Therefore, the State is failing to provide handicapped children with "the basic floor of opportunity" embodied in the Act. By refusing to consider the potential need of these children for programming "access to specialized instruction and related services which are individually designed to provide educational benefit to the handicapped child." Id. 102 S.Ct. at 3048. Finally, despite the lack of sufficient funds, the state is providing non-handicapped children and a few categories of handicapped children with educational services in excess of the traditional 9 month school year. Thus, it must be assumed that the scarcity of funding is being permitted to bear more heavily on the severely handicapped.[7] Thus, it is the conclusion of this court, under the facts presented by the circumstances of this case, that the State of Missouri is denying the plaintiffs class a "free appropriate education" by failing to consider their educational needs in excess of the 180 day school year.
In addition to alleging that the State defendants are in violation of the Education For All Handicapped Children Act by maintaining a policy which prohibits the consideration or provision of educational services to the handicapped in excess of the traditional 9 month school year, the plaintiffs class also has brought a cause of action against the SSD on the same grounds.[8] In order to determine whether the SSD is in breach of a duty imposed upon it by the Act, it is necessary to examine the statutory framework provided by Congress. One purpose of the Education *560 For All Handicapped Children Act was to provide for one centralized agency in each state to assume responsibility for the provision of a "free appropriate education" to handicapped children. Therefore, ultimate responsibility for compliance with statutory mandates rests on the state education agency. Kruelle v. Biggs, 489 F.Supp. 169, 174 (D.Del 1980), affirmed Kruelle v. New Castle County School District, 642 F.2d 687 (3rd Cir.1981). Section 1412(6) explicitly provides:
The state educational agency shall be responsible for assuring that the requirements of this subchapter are carried out and that all educational programs for handicapped children within the state, including all such programs administered by any other state or local agency, will be under the general supervision of the persons responsible for educational programs for handicapped children in the state educational agency and shall meet educational standards of the state educational agency.[9]
In light of the above statutory provision, it is the conclusion of this court that it is the responsibility of the state educational agency either to make sure that local agencies provide adequate services to handicapped children, or to provide these services. Georgia Ass'n of Retarded Citizens v. McDaniel, 511 F.Supp. 1263 (N.D.Ga.1981). Therefore, the SSD will not be adjudged to have breached a duty imposed by the Education For All Handicapped Children Act.[10] However, it will have a joint obligation with the state in the future to provide the severely handicapped with an appropriate education, although ultimate responsibility will still fall on the state.

2. The 9 Month Policy and the Rehabilitation Act
In addition to asserting that the policy of the defendants which precludes the consideration of the educational needs of handicapped children in excess of the traditional 9 month school year violates the Education For All Handicapped Children Act, the plaintiffs' class also has brought a cause of action pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. The statute provides:
No otherwise qualified handicapped individual in the United States, as defined in § 706(7) of this title, shall, solely by reason of his handicap be excluded from the participation in, be denied of the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service. The head of each such agency shall promulgate such regulations as may be necessary to carry out the amendments to this section made by the Rehabilitation, Comprehensive Services, and Developmental Disabilities Act of 1978. Copies of any proposed regulations shall be submitted to appropriate authorizing committees of the Congress, and such regulation may take effect no earlier *561 than the thirtieth day after the date on which the regulation is so submitted to such committees.
It must be concluded from the plain meaning of the statute that a state educational system which is in receipt of federal funds is in violation of the Rehabilitation Act if the entity's practices preclude the handicapped from obtaining benefits realized by the non-handicapped. New Mexico Association for Retarded Citizens v. New Mexico, 678 F.2d 847 (10th Cir.1982). It is evident from the record established at trial that the State of Missouri receives federal funds which it distributes to local districts for the purpose of educating non-handicapped children during the summer months without providing comparable services to the severely handicapped. See Findings of Fact Nos. 18-20. Whatever benefits non-handicapped children realize when they attend summer school in Missouri are not available to the severely handicapped. By maintaining this policy the State of Missouri has violated the Rehabilitation Act on its face.[11]
In addition to alleging that a policy which precludes the provision of educational services to handicapped children in excess of the traditional 9 month year violates the Rehabilitation Act, 29 U.S.C. § 794, the plaintiffs' class also claims that the policy conflicts with the regulations promulgated pursuant to the statute. The relevant regulations require recipients of federal funds that operate public elementary or secondary programs to "provide a free appropriate public education to each qualified handicapped person ...." 34 C.F.R. § 104.33(a). Appropriate education is defined as regular or special education designed "to meet individual educational needs of handicapped persons as adequately as the needs of non-handicapped persons are met ..." 34 C.F.R. § 104.33(b)(1). The regulations further provide a means of meeting the requirement that education meet the individual needs of a handicapped is through the development of an IEP. 34 C.F.R. § 103.33(b)(2). The language used in these regulations clearly parodies the language in the Education For All Handicapped Children Act, 20 U.S.C. §§ 1401 et seq.; the emphasis is the same. In order to comply with the regulations, school officials are obligated to consider the individual needs of the child in order to meet the requirement of an "appropriate education". Georgia Ass'n of Retarded Citizens v. McDaniel, 511 F.Supp. 1263, 1281 (N.D.Ga.1981). To the extent that the state's policy precludes the consideration of the individual needs of all handicapped children and provides services to the non-handicapped, the state is in violation of the Rehabilitation Act and its regulations.[12]

*562 3. The Claims for Relief by the Named Plaintiffs

In addition to seeking declaratory and injunctive relief against the continued application of defendants' policy, which precludes the provision of education programs for handicapped children in excess of the traditional 9 month school year, plaintiffs seek an order requiring defendants to provide an extended school year program for named plaintiffs Michael Yaris and Adam Stubbs. For reasons which will be stated, this court does not feel it would be appropriate to grant the requested relief.
In addition to examining the substantive standards set out by Congress in the Education For All Handicapped Children Act in Rowley, supra, the Court set out the appropriate standards for judicial review of a child's IEP. Section 1415(e)(2) provides that a civil action may concern "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." The Act further provides that in reviewing the complaint a court "shall receive the record of the [state] administrative proceeding, shall hear additional evidence at the request of a party, and basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." Section 1415(e)(2). On the basis of these provisions the Supreme Court concluded that Congress did not intend a court reviewing a child's IEP to "have a free hand to impose a substantive standard of review which can not be derived from the Act itself." 102 S.Ct. at 3051. The Court then went on to suggest that a court's inquiry is limited to two considerations: "First, has the state complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits?" Id. However, the opinion emphasized that a reviewing court must restrain itself from imposing its view of "preferable educational methods upon the states." Id.
Applying the above principles to the facts presented by this case this court must conclude that it is appropriate for the defendants to consider the needs of the named plaintiffs for educational services in excess of the traditional 9 month school year in the first instance. It has been found that it is presently the pattern and practice of the defendants not to consider whether handicapped children are in need of extended programming. See Findings of Fact Nos. 15, 17. Therefore, the needs of Adam and Michael have never been considered at the state level. Local officials clearly have a higher level of expertise in resolving this type of issue. For this reason, Congress specifically left the primary responsibility for developing a free appropriate education with state educational agencies, which are primarily responsible for the development of the IEP. Therefore this court declines to require the defendants to provide the named plaintiffs with educational services in excess of the traditional 9 month school year. However, it will be the order of this court that the defendants shall consider the needs of the named plaintiffs and the member of the class without the limitation previously imposed by the defendants' policy of precluding the provision of educational services in excess of the traditional 180 day school year.

4. Violations of 42 U.S.C. § 1983, the United States Constitution and Missouri State Law.
In addition to challenging the defendants' policy of limiting educational services for the handicapped in the State of Missouri to the traditional 9 month school year pursuant to the Education For All Handicapped Children Act, 20 U.S.C. §§ 1401 et seq., and § 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794, the plaintiffs' class also alleged a cause of action for statutory *563 violations pursuant to 42 U.S.C. § 1983. In Maine v. Thiboutot, the Supreme Court suggested that 42 U.S.C. § 1983 is available as a remedy for violations of federal statutes. 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). Subsequently, the Court limited this principle substantially by recognizing two exceptions to this general rule. Middlesex County Sewage Authority v. National Sea Clammers Association, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981). However, it is unnecessary to reach the § 1983 issue under the facts of this case because violations of the Education For All Handicapped Children Act and the Rehabilitation Act have been found. The plaintiffs' class is not seeking damages in this action. Furthermore the relief requested for the statutory violations is coextensive with the relief sought pursuant to § 1983. Meiner v. Missouri, 673 F.2d 969 (8th Cir.1982).
The plaintiffs' class also has alleged that the policies of the defendants violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment, and that 42 U.S.C. § 1983 provides a remedy for these violations. Whenever an issue may be resolved on statutory grounds, it is appropriate for a court not to address the constitutional claims. Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1935). Therefore, these issues will not be addressed.
Finally, the class of plaintiffs seek to invoke this court's pendent jurisdiction to review its claim under the Missouri Constitution and Mo.Rev.Stat. §§ 162.670 et seq. The exercise of pendent jurisdiction lies within the discretion of the court. United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The interpretation of the Missouri statutes involves novel questions of state law which this court is reluctant to consider. It is more appropriate for state courts to interpret state law in the first instance. Georgia Ass'n of Retarded Citizens v. McDaniel, 511 F.Supp. 1263, 1283. Therefore, these issues will not be reached.

5. The Individual Claim of the Yaris Plaintiffs Against the Special School District
In Count I of the complaint plaintiffs Robert and Mary Yaris brought an individual action on their own behalf, and on the behalf of their minor son, against the Special School District for failing to provide their minor son with an appropriate education. More specifically, the plaintiffs allege that the defendant SSD failed to implement an educational program for Michael in a timely manner and failed to pay costs incurred during the administrative proceedings. The plaintiffs contend that the actions of the defendant constitute a violation of the Rehabilitation Act, 29 U.S.C. § 794, 42 U.S.C. § 1983, and Missouri state law; they seek injunctive, declaratory, and monetary relief. Plaintiffs seek reimbursement for costs of the transcript and record of the panel hearing and for providing an education for Michael from April of 1979 through August of 1980. See Finding of Fact No. 30.
On the basis of the record and evidence adduced at trial, see Findings of Fact Nos. 30-42, it is the conclusion of this court that the SSD has not breached any obligation required by law by failing to reimburse the plaintiffs for the cost of educating Michael from April of 1979 through August of 1980. It is clear from the record that the SSD made a good faith effort to implement Michael's IEP in a timely fashion. Furthermore, the plaintiffs have failed to present authority for its allegation that a school district is in breach of its legal obligations if it fails to provide costs for educating a handicapped child prior to the implementation of a child's IEP.[13] Furthermore, in this case several of the delays resulted from the *564 actions of the plaintiffs. However, under Missouri law, the plaintiffs are entitled to recover costs incurred for the transcript and record sent to the State Board of Education, in the amount of $388.70.

Relief
Accordingly, plaintiffs will be awarded $388.70 against the SSD on Count I of the complaint. The relief requested with respect to state defendants in Count II will be granted in part. It is the judgment of this court that the application of a policy which precludes the provision of educational services for the handicapped in excess of the traditional 9 month school year is unlawful. Therefore, an injunction will be entered prohibiting the continued application of a policy which refuses to consider the needs of the handicapped children for extended programming. In addition, an injunction will be entered requiring the state to live up to its obligation of making sure that local agencies provide handicapped children with an appropriate education by not applying a policy that refuses to consider the needs of the handicapped for summer programming. Finally, the request of the named plaintiffs for an injunctive relief requiring the defendants to provide them with extended programming will be denied. However, the state defendants will consider the need of these plaintiffs for educational services in excess of 180 days.
NOTES
[1] The gravamen of the complaint is found in Count II in which the class of handicapped children and their parents contest a policy and practice of refusing to provide or consider providing educational services for handicapped children in excess of 9 months a year. In Count I, plaintiffs Robert and Mary Yaris bring an individual action on their own behalf, and on behalf of their minor son, against the Special School District for failing to provide their son with an appropriate education. The plaintiffs allege the defendant is in violation of the Rehabilitation Act, 29 U.S.C. § 794, 42 U.S.C. § 1983, and Missouri State law due to its failure to implement any educational program for Michael Yaris in a timely manner, and due to its failure to pay for some of the costs incurred by the Yarises in the administrative proceedings; in the latter count the plaintiffs seek injunctive, declaratory, and monetary relief.
[2] See Armstrong v. Kline, 476 F.Supp. 583 (E.D.Pa.1979), remanded sub nom. Battle v. Pennsylvania, 629 F.2d 269 (3rd Cir.1980); Georgia Ass'n of Retarded Citizens v. McDaniel, 511 F.Supp. 1263 (N.D.Ga.1981).
[3] The questions raised by the 180 day policy will be considered before considering the issues raised by the Yaris plaintiffs in their individual action against the SSD.
[4] Several courts have considered the question whether the policy of refusing to provide more than 180 days of education is incompatible with the requirements of the Act. Unfortunately, with the exception of one case, these opinions were decided prior to Board of Education of the Hendrick Hudson Central School District v. Rowley, ___ U.S. ___, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). Every court, prior to the Rowley required state administrators to consider the needs of handicapped children in excess of the traditional 9 month school year. Battle v. Pennsylvania, 629 F.2d 269 (3rd Cir. 1980), cert. denied, 452 U.S. 968, 101 S.Ct. 3123, 69 L.Ed.2d 981 (1980); Georgia Ass'n of Retarded Citizens v. McDaniel, 511 F.Supp. 1263 (N.D.Ga.1981); Lee v. Clark, No. 80-0418 (D.Hawaii Jan. 30, 1981); Moore v. Roberts, No. LR-C-81-419 (E.D.Ark. July 24, 1981); Hilden v. Evans, No. 80-511-RE (Oregon, Nov. 5, 1980). In Battle v. Pennsylvania, the only Court of Appeals decision, the Third Circuit held that the "inflexible application of a 180 day maximum prevents the proper formulation of appropriate educational goals for individual members of the plaintiff class." Only one court has upheld the application of this policy. In Crawford v. Pittman, the court held "that the Education for Handicapped Children Act did not intend to mandate a specific federal handicapped educational standard", and therefore states were free to provide minimal programming to handicapped children. No. GC 80-16-LS-0 (July 12, 1982). The reasoning of the latter decision is clearly incorrect in light of the Supreme Court's holding in Rowley, in which the court concludes that the Act prescribes the basic federal standards that states must meet in order to receive funds under the Act. Therefore, the remaining question is whether the principles enunciated by the Supreme Court in Rowley are in conflict with the reasoning of the courts which found the policy of refusing to consider educational programming for the handicapped in excess of the 9 month school year in conflict with the requirements of the Act. For reasons stated in the text, this court does not believe that Rowley changes this basic conclusion, although the reasoning found in several of these cases may have to be modified. The only court that has considered the issues presented by this case subsequent to the Rowley decision is Phipps v. New Hanover County Bd. of Educ., 551 F.Supp. 732 (E.D.N.C.1982). The court reasoned that "[i]t is clear that under the EA HCA, and its regulations, the Board must provide services year round if a handicapped child will substantially regress during the summer recess." 551 F.Supp. at 734 (cites omitted).
[5] This case dealt with the education of Amy Rowley, a deaf student who attended school at Furnance Woods School in the Hendrick Hudson Central School District, Peekskill, New York. Amy has minimal residual hearing and is an excellent lipreader. Her parents and teachers decided to place Amy in a regular kindergarten class. Several members of the school administration attended a course in sign language, a teletype machine was installed in the principal's office to facilitate communication with her parents, and she was also provided with a hearing aid. Amy successfully completed her kindergarten year. The issue before the Supreme Court was whether the Education For All Handicapped Children Act required school administrators to provide Amy with a qualified sign language interpreter in all of her academic classes. Despite its findings that Amy was performing better than the average child in class and that she was advancing easily from grade to grade, the District Court held that the failure to provide her with an interpreter was in violation of the Act. A divided panel of the United States Court of Appeals for the Second Circuit affirmed and the Supreme Court reversed.
[6] When rejecting the requirement that states are obligated to provide handicapped children with equal educational opportunities, the Court reasoned that the standard was unworkable because it required impossible measurements and comparisons. The Court further noted that the standard was inadequate because "furnishing handicapped children with only such services as are available to non-handicapped children would in all probability fall short of the statutory requirement of `free appropriate public education'."
[7] Although this court sympathizes with the difficulties faced by state officials in an era in which resources are scarce and cutbacks are frequent, this court can not help but note that only one state in the country appropriates less funds than the State of Missouri for its educational system.
[8] Despite the defendant SSD's claim to the contrary it has been concluded that the District in fact has a policy that precludes the provision of educational services in excess of the traditional 9 month school year. See Findings of Fact Nos. 16 and 17.
[9] The Act further provides that if a local agency fails to provide appropriate services it is the responsibility of the state to provide an appropriate education directly to the handicapped children in the area served by the local agency. 20 U.S.C. § 1414(d).
[10] There are additional reasons for not imposing liability upon the SSD. The SSD is clearly not discriminating against the handicapped or the severely handicapped in the use of funds because it does not provide educational services to non-handicapped children. Furthermore, the district does not provide any services during the summer school break. In contrast, it is the state which has agreed to allocate funding for the education of the non-handicapped in the summer months and at the same time has refused to provide comparable funds for the education of the handicapped and severely handicapped children. Therefore, if the scarcity of funding is not to be permitted to bear more heavily on the handicapped child, some of the funds presently used for extended programming provided to non-handicapped children should be allocated by the state to local districts for the purpose of providing comparable services to the handicapped. It would serve no logical purpose to order the SSD to use its already limited resources for the specific purpose of providing extended programming; additional funds should be provided by the state in the fulfillment of its responsibilities under the Act.
[11] Just as it was inappropriate to find the SSD liable under the Education For All Handicapped Children Act, 20 U.S.C. §§ 1401 et seq., it would be inapposite to hold that the SSD is in breach of its duties under the Rehabilitation Act, 29 U.S.C. § 794, or its regulations. The SSD is not in a position to be discriminating against the handicapped by providing services to the non-handicapped which it has failed to provide to the handicapped because it uses its funds exclusively for the education of the handicapped. The plaintiffs' class has not alleged that the SSD provides services to certain categories of the handicapped that are not provided to the severely handicapped.
[12] This court recognizes that the validity of regulations enacted pursuant to the Rehabilitation Act, 29 U.S.C. § 794, have been called into question by the Supreme Court in Southeastern Community College v. Davis, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979). In that case the Court construed regulations concerned with the post-secondary education rights of handicapped students. The Court reasoned that "[i]f these regulations were to require substantial adjustments in existing programs beyond those necessary to eliminate discrimination against otherwise qualified individuals, they would do more than clarify the meaning of Section 504" and therefore would be invalid. Id. at 410, 99 S.Ct. at 2369. In the face of this decision a number of courts have found the regulations presently before this court valid. New Mexico Association for Retarded Citizens v. New Mexico, 678 F.2d 847 (10th Cir.1982); Phipps v. New Hanover County Bd. of Educ., 551 F.Supp. 732 (E.D.N.C.1982); Association for Retarded Citizens v. Frazier, 517 Supp. 105 (D.Colo. 1981); Georgia Ass'n of Retarded Citizens v. McDaniel, 511 F.Supp. 1263 (N.D.Ga.1981). This court concurs with this conclusion in the context of this case. It has already been shown that the additional services requested by the plaintiffs' class are required by the Education For All Handicapped Children Act. 20 U.S.C. §§ 1401 et seq. Therefore, the implementation of these regulations do not require "substantial adjustments in existing programs". Whether or not the regulations would be valid if the State of Missouri was not a recipient of and under the Education For All Handicapped Children Act is not a question that this court needs to reach.
[13] Plaintiffs' use of Howard S. v. Friendswood Independent School District, 454 F.Supp. 634 (S.D.Tex.1979) as authority for recovery is inapposite. In that case, the court agreed to award the plaintiff relief because it found that the school district had engaged in a calculated, deliberate effort to avoid its legal responsibilities by failing to have a due process hearing and by constructively expelling the plaintiff.