599 F.Supp. 926 (1984)
Robert and Mary YARIS, on their own behalf and as next friends of Michael Yaris, and on Behalf of all those similarly situated, and Stephen and Marilyn Stubbs, next of friend to Adam Stubbs
v.
SPECIAL SCHOOL DISTRICT OF ST. LOUIS COUNTY, Arthur L. Mallory, Leonard W. Hall, Department of Elementary and Secondary Education and State Board of Education.
No. 81-423C(1).
United States District Court, E.D. Missouri, E.D.
December 28, 1984.
*927 Kenneth M. Chackes and Michael J. Hoare, St. Louis, Mo., for plaintiff.
Ramon J. Morganstern and Michael J. McKitrick, St. Louis, Mo., Jerry Short and Nancy D. Kelley, Jefferson City, Mo., for defendant.

MEMORANDUM
NANGLE, Chief Judge.
This case is once again before this Court on the petition of plaintiffs and defendant Special School District of St. Louis County (hereinafter SSD) for a funding order.[1] In addition, plaintiffs' application for an award of attorney's fees is presently before this Court.

I. PETITION FOR A FUNDING ORDER
The parties have eliminated many of the evidentiary deficiencies noted by this Court in the Order and Memorandum dated April 10, 1984. This has been achieved by filing a joint "Stipulation" and separate supplemental memoranda. Perhaps the most useful part of this new material is the enumeration by plaintiffs and the SSD of five (5) specific types of relief that they seek from this Court. Plaintiffs and the SSD seek an order directing the State of Missouri to provide the following relief:
(1) That exceptional pupil aid under § 162.975 also be available for summer programming, adjusted equitably on the basis of the proportion of hours of instruction in the summer program as compared to the hours of instruction during the regular school year. For example, if a local school district is entitled to $10,000 per class during the regular school year of 1,080 hours, a local school district with a class during the summer with 120 hours would be reimbursed on the basis of 120/1,080 × the $10,000 per class amount.
(2) That aid for contractual services be provided on the same proportionate per diem basis for summer programs as such aid is provided for regular school programs.
(3) That the State not be permitted to use discretionary P.L. 94-142 federal *928 funds to defray the total cost of its summer programming to its severely handicapped children, but rather, any such funds be distributed directly to local school districts in the same manner as prior to the Yaris decision, in which the State provided 85% of its federal funds to local school districts.
(4) That the foregoing State aid be provided retroactive to the summer of 1983.
(5) For reasonable attorneys' fees and costs, and for such other and further relief as this Court deems just and appropriate.
Supplemental Memorandum Of Plaintiffs And The Special School District Of St. Louis County In Support Of Petition For Funding Order at 13-14. In the opinion of this Court, the above five (5)-point request is an appropriate basis for analyzing the need for a funding order in this case. A brief outline of the current educational fiscal structure in the State of Missouri will be helpful in such analysis.
During the regular nine (9)-month school year, local districts are eligible for State aid for both handicapped and non-handicapped students under the foundation formula, Mo.Rev.Stat. §§ 163.011, 163.031 (1978 as amended), and under provisions for transportation reimbursement, Mo.Rev. Stat. § 163.161 (1978 as amended). The foundation formula calculates State aid on the basis of the number of students in attendance and the number of days classes are held on a full-time basis. Adjustments are made to include part-time students and summer school students in the calculation of the "average daily attendance" figure.
Handicapped children are treated differently, fiscally speaking, than non-handicapped children during both the regular and summer terms. During the summer term handicapped children are eligible for foundation formula aid so long as the summer session consists of a minimum of sixty (60) clock hours. 5 CSR 50-340.050(1). Summer programs for non-handicapped children are required to have a minimum of one hundred twenty (120) clock hours to be eligible for foundation formula aid. Id. Also, during the summer term handicapped children are eligible for transportation aid, whereas non-handicapped children are not. 5 CSR 50-340.050(7). During the regular school year handicapped children in local districts receive exceptional pupil aid, Mo. Rev.Stat. § 162.975 (1978), and aid for contractual services, Mo.Rev.Stat. § 162.980 (1978). Non-handicapped children, on the other hand, receive neither type of aid.

A. EXCEPTIONAL PUPIL AID
The first item, exceptional pupil aid under Mo.Rev.Stat. § 162.975 (1978), is the most difficult one to analyze. Section 162.975 provides, in pertinent part, as follows:
1. Each school district or special school district maintaining one or more approved special programs for handicapped or severely handicapped children under the provisions of sections 162.670 to 162.995 shall receive state aid at the rate of six thousand dollars for each approved class of children per term of one hundred eighty days as provided by section 168.021, RSMo, except that approved classes for the educable mentally retarded shall be funded at four thousand five hundred dollars per approved class, and approved classes of remedial reading shall be funded at three thousand five hundred dollars per approved class. The rates of reimbursement for approved classes in this subsection shall be adjusted annually by the same percent that the appropriation of state funds for the school foundation program is changed from the previous year.
(emphasis added). The statute defines a "class" as a "group of not less than ten children...." Mo.Rev.Stat. § 162.975(6) (1978). In the opinion dated March 2, 1983, this Court commented on § 162.975, as follows:
[S]tate aid for the education of the handicapped, in the form of funds provided by class, staff members and staff aid, is limited to a "term of one hundred eighty days" by Missouri State law. Mo.Rev. Stat. § 162.975.
*929 Yaris v. Special School District of St. Louis County, 558 F.Supp. 545, 550 (E.D. Mo.1983) (emphasis added). Plaintiffs and defendant SSD also interpret § 162.975 as "limiting" exceptional pupil aid to a term of one hundred eighty (180) days and argue that the "unavailability" of exceptional pupil aid during the summer months has the effect of discouraging local districts from providing summer programs. This Court previously agreed with this argument, as follows:
[I]n the event a local district wishes to provide handicapped children with education beyond the traditional 180 days, the local agency must bear the additional cost. The responsibility for this financial burden may very well deter a local district from considering the needs of handicapped children for school in excess of 180 days. Therefore, although the state defendants' policy toward summer programming of children in Missouri is perhaps neutral on its face, it has the effect of providing services to non-handicapped children, which are denied to the handicapped and severely handicapped.
Id. at 550-51.
The State defendants, however, argue that "[p]etitioners' criticism is meaningless in the context of the statute." State Defendants' Supplemental Memorandum In Opposition To Petitions For Funding Order at 5. The basis of their argument is that, unlike foundation formula aid which is calculated by the number of students and days of attendance, exceptional pupil aid is a lump sum. The State defendants interpret the language, "per term of one hundred eighty days", Mo.Rev.Stat. § 162.975 (1978), as merely a "minimum number of days a school district must have in their regular school calendar in order to qualify for state aid." Id. In addition, the State defendants argue that § 162.975 does not deter local districts from considering the needs of handicapped children for school in excess of 180 days, because "[n]othing prevents a local district from allocating its resources so as to utilize a percentage of the exceptional pupil aid it receives for summer school." Id. at 6.
This Court is persuaded by the arguments of the State defendants. To criticize § 162.975 as "limiting" exceptional pupil aid to one hundred eighty (180) days is somewhat meaningless because of the manner in which the aid is distributed. A lump sum for each class of ten (10) children is far different from aid distributed on the basis of a formula that utilizes the total number of students and the total number of days or hours that they are in attendance. A true "limit" would exist if instructional time beyond one hundred eighty (180) days were not compensable or could not be included in the calculation. The one hundred eighty (180) day figure in § 162.975 is not a true "limit" on the amount of aid available because time is simply not a variable in the calculation. Indeed, the amount of aid available is not subject to variation at all. In addition, the State defendants' reading of the one hundred eighty (180) day term as a minimum standard is reasonable and is also buttressed by the statute's reference to § 163.021. That section is entitled "Eligibility for state aid  requirements," and it sets out a host of minimum standards that must be met to be eligible for any state educational aid. Mo. Rev.Stat. § 163.021 (1978 as amended). Finally, this Court is also persuaded that any deterrence which results from the way § 162.975 is structured is not significant enough to warrant interference with the state's fiscal decisions. A significant deterrent would exist if foundation formula aid were limited to one hundred eighty (180) days. In that situation, the State would be treating summer school different from the regular school year for handicapped children and the local districts would be receiving aid during the regular year that they wouldn't receive during the summer. Because exceptional pupil aid is distributed as a lump sum, however, the only significant deterrent which results from § 162.975 is that a local district that provides summer instruction may have to stretch its lump sum over twelve (12) months rather than nine (9) months.
*930 Focusing on this latter type of deterrence also suggests an important reason why the request of plaintiffs and SSD must be denied. At the trial on the merits in this case, this Court did not try or purport to decide what amount of aid is necessary to provide an adequate education for handicapped children. Implicit in plaintiffs' and SSD's request that this Court proportionately increase the amount of exceptional pupil aid to account for summer school hours is the premise that the current lump sum is the amount needed to provide an adequate education for only nine (9) months. For example, in their brief plaintiffs and SSD assert that the fact that the State provides exceptional pupil aid and contractual services during the regular school year evidences "the Missouri Legislature's acknowledgment that such additional aid is needed in order to provide handicapped children the same basic level of educational opportunity as non-handicapped children." Supplemental Memorandum Of Plaintiffs And The Special School District Of St. Louis County In Support Of Petitions For Funding Order at 4. While the fact that exceptional pupil aid exists may "evidence" said "acknowledgment" on the part of the State, it by no means establishes any given lump sum as the minimum amount of aid needed to provide handicapped children with an adequate education. Indeed, the lump sum provided as exceptional pupil aid has fluctuated over the past few years. In 1977 the amount was $6,000.00 for each class and in 1984 the amount is approximately $10,000.00 for each class. Because this Court did not try to decide what minimum level of State spending is required to comply with federal law, this Court lacks the power to prevent the State from reducing this amount to $9,000.00 or $8,000.00 in 1985. It follows that the relief requested by plaintiffs and SSD would ultimately prove ineffectual  even if this Court were to order the State to provide exceptional pupil aid in an amount that would be for summer school only, by proportionately increasing the lump sum based on the number of summer school hours, nothing would prevent the State from reducing the regular year lump sum to regulate the twelve (12) month total exceptional pupil aid. In addition, the request by plaintiffs and SSD injects a time variable into the distribution of exceptional pupil aid. However, neither plaintiffs nor SSD have directed this Court's attention to any authority that requires the State to allocate its educational dollars on the basis of hours or days.
Two additional reasons support this Court's conclusion to refrain from altering the State's exceptional pupil aid scheme. The first is that two (2) summers have passed since this Court issued its opinion on the merits in this case, and no evidence was presented that any handicapped child identified as needing summer programming has been denied summer programming by a local district or by the State defendants.[2] In the absence of such evidence, the efforts of plaintiffs and SSD herein must be viewed as an attempt to "bootstrap" from this Court that which they cannot obtain from the Missouri Legislature.
The second reason is an amplification of the first. The sensitive balance of federal and state powers is seriously implicated whenever a federal court purports to regulate a state's fiscal decisions. Such an entanglement should not be created except where clearly necessary. In the absence of evidence that the State's current fiscal scheme results in the denial of summer school to any handicapped child who needs it, there is no clear necessity for this Court to tip the balance of state and federal power as it relates to educational funding.
Accordingly, plaintiffs' and SSD's request that this Court adjust the amount of exceptional pupil aid provided under § 162.975 be and is denied.

*931 B. CONTRACTUAL SERVICES AID
The second item requested by plaintiffs and SSD is that so-called "contractual services aid" be available during the summer on the same basis that it is available during the regular school year. Contractual services aid is markedly different from exceptional pupil aid. Paragraph 21 of the stipulation filed herein states, as follows:
State aid for contracted services, reimbursed during the regular school year at $22.40 per student per day for approved programs, is not available for summer program contracted services.
Stipulation at 10. Thus, contractual services aid differs from exceptional pupil aid in that the former is distributed as a given amount per unit of time and the time component is limited to the nine (9)-month academic year, whereas neither is true of exceptional pupil aid.
The State defendants have not suggested any rational basis for distinguishing between summer school and the regular term for purposes of distributing contractual services aid. Because it is so limited, it is likely to produce a significant deterrent to local districts who must provide summer school to handicapped children who need extended programming. By making this distinction the State defendants have not met their "responsibility ... to make sure that local agencies provide adequate services to handicapped children ...." Yaris v. Special School District of St. Louis County, 558 F.Supp. 545, 560 (E.D.Mo.1983). Unlike exceptional pupil aid, there is a clear necessity to order the State defendants to make contractual services aid availability to local districts for summer programming.
Accordingly, the State defendants shall be ordered to provide contractual services aid to local districts for summer programming on the same basis as they do for the regular year. If summer programming consists of less than full-time classes, then the aid may be adjusted proportionately, such as by using hours rather than days for purposes of the calculation in the summer. To prevent the State from evading the purpose of this relief, it may not reduce the reimbursement rate of $22.40 per student per day between now and December 31, 1986, except by leave of Court.

C. DISCRETIONARY P.L. 94-142 FUNDS
The third item requested by plaintiffs and SSD is that this Court order the State defendants to provide 85% of its discretionary P.L. 94-142, 89 Stat. 773 funds to local districts. The factual basis for this request is summarized in ¶ 5 of the stipulation, as follows:
5. Federal regulations require the State to distribute 75 percent of P.L. 94-142 federal funds to local educational agencies; up to 5 percent may be used for administrative purposes; the remaining 20 percent are discretionary funds. During FY 83 $19,001,680 was distributed to local educational agencies through the P.L. 94-142 entitlement formula. This represented 85 percent of the total P.L. 94-142 funds included in the FY 83 grant award. The FY 84 budget amount for local agency entitlement is $19,398,400. This represents 81 percent of the total P.L. 94-142 funds included in the FY 84 grant award.
Stipulation at 3. There are several reasons why plaintiffs' and SSD's third request must be denied.
First, if this Court were to order the State defendants to give 85% of their P.L. 94-142 funds to local districts, this Court would be obviating federal regulations which require the State to distribute only 75% of said funds to local districts. By giving 81% to local districts in 1984, the State gave 6% more than it was required to give. The portion labeled "discretionary" would no longer be discretionary if this Court granted the request at issue.
Second, although in 1984 the State reduced the percentage of P.L. 94-142 funds that it distributed to local districts from 85% to 81%, the total amount distributed actually increased significantly.
Third, the State's use of P.L. 94-142 funds is more like exceptional pupil aid for *932 purposes of analyzing the request of plaintiffs and SSD. The State does not make any arbitrary distinction between the regular year and summer school with respect to P.L. 94-142 funds and there is no persuasive evidence that the State's handling of P.L. 94-142 funds results in local districts refusing to consider the needs of handicapped children for summer school.
Finally, part of plaintiffs' and SSD's objection to the State's use of P.L. 94-142 funds stems from the fact that subsequent to this Court's decision on the merits, the State began using a portion of discretionary P.L. 94-142 funds to finance its own summer programming for severely handicapped children. However, plaintiffs' and SSD's objection is without merit. Not only did this Court's decision not preclude the State from providing summer programming on its own, but this Court expressly anticipated such an occurrence:
[I]t is the conclusion of this court that it is the responsibility of the state educational agencies either to make sure that local agencies provide adequate services to handicapped children, or to provide these services.

Yaris v. Special School District of St. Louis County, 558 F.Supp. 545, 560 (E.D. Mo.1983) (emphasis added) (citations omitted).
Accordingly, the third request of plaintiffs and SSD is denied.

D. RETROACTIVE FUNDING ORDER
The fourth request of plaintiffs and SSD is that any funding order issued by this Court be retroactive to the summer of 1983. In the opinion of this Court retroactivity is not warranted in this case and therefore the fourth item is denied.

E. ATTORNEY'S FEES AND COSTS
The final item is the request of plaintiffs and SSD for an award of attorney's fees and costs incurred in connection with their request for a funding order. As explained more fully infra, plaintiffs' counsel is not entitled to an award of attorney's fees for his work on the case in chief due to the Supreme Court's recent decisions in Smith v. Robinson, ___ U.S. ___, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), and Irving Independent School District v. Tatro, ___ U.S. ___, 104 S.Ct. 3371, 82 L.Ed.2d 664 (1984). The essence of these decisions is that the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794, "is inapplicable when relief is available under the Education of the Handicapped Act [EHA] to remedy a denial of educational services." Tatro, ___ U.S. at ___, 104 S.Ct. at 3379. With respect to the only relief granted herein to plaintiffs and SSD as a result of their petition for a funding order, i.e., contractual services aid, the basis of said relief is the EHA and not the Rehabilitation Act. Moreover, the evidence submitted in the stipulation convinces this Court that the State of Missouri is not discriminating against handicapped children in favor of non-handicapped children with respect to summer school funding by State or Federal dollars. See Stipulation ¶ 11. The State's allocation of contractual services aid violates the EHA because it deters local districts from considering the needs of handicapped children for summer programming. Because a funding order with respect to contractual services aid "is available under the Education of the Handicapped Act", the Rehabilitation Act is "inapplicable" and attorney's fees are not recoverable. Tatro, ___ U.S. at ___, 104 S.Ct. at 3379.

II. ATTORNEY'S FEES
In February of 1984, the Eighth Circuit, in a per curiam opinion, affirmed this Court's judgment in the case at bar. Shortly thereafter, plaintiffs filed their petition for an award of attorney's fees. This Court held a hearing on said petition in late Spring of 1984. Post-hearing briefs, including plaintiffs' reply, were filed by July 6, 1984. However, on July 5, 1984, the Supreme Court handed down two decisions which impact heavily on plaintiffs' petition for attorney's fees: Smith v. Robinson, ___ U.S. ___, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984); Irving Independent School *933 District v. Tatro, ___ U.S. ___, 104 S.Ct. 3371, 82 L.Ed.2d 664 (1984). The parties have addressed the significance of these two (2) cases in letters to this Court. It is the opinion of this Court that Smith and Tatro prevent plaintiffs from recovering attorney's fees in the case at bar.
In Smith, the parents of a child suffering from cerebral palsy contested a school district's refusal to fund the child's placement in a special education program. The parents challenged the constitutionality of the procedure utilized to make the school district's decision and the substance of that decision. Their suit in federal District Court sought declaratory and injunctive relief based on state law; the Education of the Handicapped Act (EHA), 20 U.S.C. §§ 1401 et seq.; § 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794; and 42 U.S.C. § 1983. The District Court declared that the procedure violated federal due process requirements and that, as a matter of state law, defendants were obligated to pay for the child's education. Although the District Court did not decide plaintiffs' federal statutory and constitutional claims relating to his substantive challenge, it awarded attorney's fees to plaintiffs under 42 U.S.C. § 1988 and § 505 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 795, because the unaddressed federal claims were substantial and nonfrivolous. On plaintiffs' appeal from the Court of Appeals' reversal of the attorney's fees award, the Supreme Court held that plaintiffs were not entitled to fees under either § 1988 or § 505, because the relief obtained by plaintiffs was available under the EHA.
The Supreme Court in Smith reasoned that Congress intended the EHA to be the exclusive avenue for litigating a handicapped child's right to a free appropriate public education. Smith, ___ U.S. at ___, 104 S.Ct. at 3468. The Court further reasoned that by creating a comprehensive remedial scheme in the EHA, which did not include a right to attorneys' fees, Congress did not intend for litigants to circumvent that scheme by bringing EHA claims together with analogous § 1983 and Rehabilitation Act claims and then claiming attorneys' fees under the latter two (2) statutes. Id. 104 S.Ct. at 3469, 3472. With respect to the Smith plaintiffs' equal protection claim under § 1983, the Court concluded:
that where the EHA is available to a handicapped child asserting a right to a free appropriate public education, based either on the EHA or on the Equal Protection Clause of the Fourteenth Amendment, the EHA is the exclusive avenue through which the child and his parents or guardian can pursue their claim.
Id. at 3470.
With respect to the Rehabilitation Act claim, the Court employed a similar, but different, analysis. Id. at 3472. The Court noted that although the Rehabilitation Act and the EHA are different substantive statutes, both statutes, "as applied to the right of a handicapped child to a public education, have been interpreted to be strikingly similar." Id. However, the Court stated that "[t]he significant difference between the two, as applied to special education claims, is that the substantive and procedural rights assumed to be guaranteed by both statutes are specifically required only by the EHA." Id. (emphasis added). From this specificity, the Court concluded that "Congress did not intend a handicapped child to be able to circumvent the requirements or supplement the remedies of the EHA by resort to the general antidiscrimination provision of § 504." Id. at 3473. The Court summarized its holding, as follows:
[W]here, as here, whatever remedy might be provided under § 504 is provided with more clarity and precision under the EHA, a plaintiff may not circumvent or enlarge on the remedies available under the EHA by resort to § 504.
Id. at 3474. In Smith, because the relief obtained by the plaintiffs was available under the EHA and, thus, § 504 was not available as an alternative basis for said relief, the plaintiffs were not entitled to attorney's fees under § 505 of the Rehabilitation Act. Id.
*934 In Tatro, the companion case to Smith, a handicapped child was being educated at public expense by defendants. However, defendants did not make provision for school personnel to administer a procedure to plaintiff, which she required to avoid injury to her kidneys, known as "clean intermittent catheterization" (CIC). The plaintiff brought suit in federal District Court alleging that defendants' refusal to provide CIC services violated the EHA and § 504 of the Rehabilitation Act. The District Court held that defendants' refusal violated both statutes and awarded attorney's fees under § 505 of the Rehabilitation Act. On appeal, the Supreme Court applied Smith and reversed the award of attorney's fees, as follows:
We hold today, in Smith v. Robinson, ..., that § 504 is inapplicable when relief is available under the Education of the Handicapped Act to remedy a denial of educational services. Respondents are therefore not entitled to relief under § 504, and we reverse the Court of Appeals' holding that respondents are entitled to recover attorney's fees.
Tatro, ___ U.S. at ___, 104 S.Ct. at 3379.
In the case at bar, plaintiffs initially relied on the EHA, the Rehabilitation Act, § 1983 (the Equal Protection and Due Process Clauses of the Fourteenth Amendment), and Missouri constitutional and statutory provisions. Yaris, 558 F.Supp. 545, 546 (E.D.Mo.1983). This Court granted injunctive relief to plaintiffs under the EHA and the Rehabilitation Act, but declined to pass on plaintiffs' other asserted bases for relief. Id. at 563. This Court held that the state defendants' policy of limiting education for handicapped children to nine (9) months violated both the EHA and the Rehabilitation Act and granted declaratory and injunctive relief. Id. at 564. Plaintiffs seek an award of attorney's fees under 42 U.S.C. § 1988 on the basis of their unaddressed constitutional claims and under 29 U.S.C. § 795 on the basis of their successful Rehabilitation Act claim.
Even though this Court did not pass on plaintiffs' Equal Protection and Due Process claims, pre-Smith decisions in the Eighth Circuit support an award of attorney's fees. In Monahan v. State of Nebraska, 687 F.2d 1164 (8th Cir.1982), cert. denied, 460 U.S. 1012, 103 S.Ct. 1252, 75 L.Ed.2d 481 (1983), the Court of Appeals stated:
It does not matter that the constitutional, or § 1983, ground was not actually reached, and that the complainant prevailed, to the extent that he did at all, on his [EHA] ground. Where a non-fee claim is joined with a non-frivolous claim under a statute providing for the award of fees, and the plaintiff prevails with respect to his non-fee claim, thus making it unnecessary to reach the § 1983 claim, an award of fees is nevertheless appropriate.
Id. at 1172. See also Robert M. v. Benton, 671 F.2d 1104 (8th Cir.1982). However, as the Eighth Circuit recently acknowledged, the validity of Monahan and Benton has been undermined by Smith with respect to Equal Protection claims where relief is available under the EHA. See Rose v. State of Nebraska, 748 F.2d 1258 at 1263 (8th Cir.1984). Smith held that "Congress intended the EHA to be the exclusive avenue through which a plaintiff may assert an equal protection claim to a publicly financed special education." Smith, ___ U.S. at ___, 104 S.Ct. at 3468. With respect to Due Process claims, on the other hand, the Smith Court declined to decide "whether the procedural safeguards set out in the EHA manifest Congress' intent to preclude resort to § 1983 on a due process challenge...." Id. at ___, 104 S.Ct. at 3470. Smith disposed of the right to attorney's fees for the Due Process claim therein by holding that the "due process claim and the substantive claim on which petitioners ultimately prevailed involved entirely separate legal theories and, more important, would have warranted entirely different relief." Id. at ___, 104 S.Ct. at 3471. The Eighth Circuit recently interpreted dicta in Smith to conclude that a successful EHA plaintiff can recover attorney's fees where: 1) a substantial, but unaddressed, Due Process claim was asserted; *935 and 2) the facts and theory of the Due Process claim were the same as those of the EHA claim. Rose v. State of Nebraska, 748 F.2d 1258 at 1263-1264 (8th Cir.1984). The plaintiffs in Rose, as in Monahan and Benton, challenged the impartiality of the EHA hearing process and sought a second hearing for themselves.
In the opinion of this Court, however, neither Rose nor Monahan and Benton entitle plaintiffs herein to attorney's fees on the basis of their Due Process claim. Unlike Rose, this was not a case "where plaintiffs ... had to resort to judicial relief to force the agencies to provide them the process they were constitutionally due." Smith, ___ U.S. at ___, 104 S.Ct. at 3471 n. 17. Plaintiffs herein did allege that the SSD should have paid for the costs of a copy of the record and transcript of the panel level hearing for review by the State Board of Education, but that claim was far from being the same as plaintiffs' EHA claim. Plaintiffs' EHA claim was that the nine (9)-month policy deprived them of a free appropriate education and discriminated against them. While this claim could arguably be characterized as an Equal Protection claim, it is not a substantial Due Process claim. Unlike a "due process challenge to state procedures," a nominal Due Process challenge to state substantive criteria is clearly "inconsistent with the EHA's comprehensive scheme." Smith, ___ U.S. at ___, 104 S.Ct. 3471 n. 17. Accordingly, plaintiffs' constitutional claims do not entitle them to an award of attorney's fees under 42 U.S.C. § 1988.
Turning to plaintiffs' right to an award of fees under the Rehabilitation Act, it is the opinion of this Court that because the relief obtained by plaintiffs was available under the EHA, Smith and Tatro render § 504 of the Rehabilitation Act inapplicable and, thus, plaintiffs are not entitled to attorney's fees. Plaintiffs argue that two passages in Smith warrant a contrary result. The first passage was, as follows:
We emphasize the narrowness of our holding. We do not address a situation where the EHA is not available or where § 504 guarantees substantive rights greater than those available under the EHA.
Smith, ___ U.S. at ___, 104 S.Ct. at 3474. This passage, however, does not support plaintiffs' argument. The EHA was available to remedy plaintiffs' allegation that the state defendants were discriminatorily denying services to handicapped children that were being provided to non-handicapped children. Indeed, this Court's opinion expressly held that said discrimination violated the EHA. Yaris, 558 F.Supp. at 559. Moreover, the Rehabilitation Act did not guarantee substantive rights "greater" than those available under the EHA. Here, the discriminatory actions of the state defendants violated both the EHA and the Rehabilitation Act, but plaintiffs would have obtained exactly the same relief if the Rehabilitation Act claim had not been made. It is precisely this type of remedial overlap that triggers application of the Smith rule in cases concerning the educational rights of handicapped children. Plaintiffs argue that under the Rehabilitation Act they asserted "substantive rights greater than those available under the EHA," because under the EHA they challenged the nine (9) month policy whereas under the Rehabilitation Act they challenged the State's discriminatory funding policy. However, there is no meaningful distinction between these two claims because the funding policy was merely a manifestation of the nine (9) month policy.
The second passage that plaintiffs rely on was, as follows:
Of course, if a state provided services beyond those required by the EHA, but discriminatorily denied those services to a handicapped child, § 504 would remain available to the child as an avenue of relief.
Smith, ___ U.S. at ___ n. 22, 104 S.Ct. at 3473 n. 22. This passage also does not support plaintiffs' position. The allegations and findings in this case were that the state defendants were not meeting their EHA obligations and that said default also violated the Rehabilitation Act. This *936 case is clearly not the type of situation, contrary to plaintiffs' argument, countenanced by footnote 22 in Smith.
This Court is mindful of the hardship imposed on plaintiffs' counsel as a result of Smith and Tatro. Said counsel is a highly skilled practitioner and reasonably expended over one thousand (1000) hours in litigating this action. The result achieved provided and will provide substantial benefits to plaintiffs and other similarly situated handicapped children. Nevertheless, it is the intention of Congress, as construed by the Supreme Court in Smith and Tatro, that said efforts not be compensated monetarily. Such a result may seem harsh, and perhaps illogical, but Congress struck the balance between encouraging private enforcement of the educational rights of handicapped children and ensuring that dollars earmarked for education actually are spent on education rather than attorney's fees in favor of the latter. Accordingly, plaintiffs' petition for an award of attorney's fees be and is denied.
NOTES
[1] Originally, plaintiffs' petition also included a motion to hold the state defendants in contempt. Said motion raised various non-monetary issues regarding the conduct of the state defendants subsequent to this Court's decision on the merits of this case. See Yaris v. Special School District of St. Louis County, 558 F.Supp. 545 (E.D.Mo.1983). However, as a result of the parties' continuing negotiations plaintiffs moved to withdraw the non-monetary portions of their contempt motion. Because this Court previously granted said motion to withdraw, the only remaining aspect of plaintiffs' petition is their request for a funding order.
[2] In fact, a footnote in one of plaintiffs' memoranda concerning attorney's fees indicates that the two (2) primary handicapped children plaintiffs in this case, Michael Yaris and Adam Stubbs, received summer school programming at public expense in 1983 and 1984. Plaintiffs' Reply Memorandum Regarding Attorneys' Fees And Expenses at 2 n. 1.