661 F.Supp. 996 (1987)
Robert and Mary YARIS, et al., Plaintiffs,
v.
SPECIAL SCHOOL DISTRICT OF ST. LOUIS COUNTY, et al., Defendants.
No. 81-423C(1).
United States District Court, E.D. Missouri.
May 29, 1987.
*997 Timothy K. Kellett, George M. von Stamwitz, Kenneth M. Chackes, Washington Univ. School of Law, St. Louis, Mo., for plaintiffs.
Jerry Short, Nancy D. Kelley, Asst. Atty. Gen., Jefferson City, Mo., for defendants.

MEMORANDUM
NANGLE, Chief Judge.
This case is now before the Court on the plaintiffs' supplemental application for attorneys' fees and expenses. As a result of earlier litigation, the plaintiffs are prevailing parties under the Education of the Handicapped Act (EHA), 20 U.S.C. § 1400 et seq. The plaintiffs now seek to recover attorneys' fees under the Handicapped Children's Protection Act of 1986 (HCPA), Pub.L. No. 99-372, §§ 2 & 3, 100 Stat. 796, 797 (1986) (to be codified at 20 U.S.C. § 1415(e) and (f)). For the reasons set out below, the plaintiffs' application is granted.
By order and memorandum dated March 2, 1983, this Court held that the refusal of the State of Missouri to consider or to provide for more than 180 days of education per school year for severely handicapped children, while providing non-handicapped children with extended summer programming, was discriminatory and denied the children a "free appropriate education," in violation of both the EHA and the Rehabilitation Act of 1973. Yaris v. Special School District of St. Louis County, 558 F.Supp. 545 (E.D.Mo.1983), aff'd, 728 F.2d 1055 (8th Cir.1984). This Court enjoined the State of Missouri from refusing to consider the needs of handicapped children for extended and summer programs. The Court did not reach the plaintiffs' federal constitutional claims for due process under the Fourteenth Amendment.
Following the grant of injunctive relief, the plaintiffs moved for a funding order and attorneys' fees. Subsequently, this Court entered a funding order but denied the plaintiffs' application for attorneys' fees. Yaris v. Special School District of St. Louis County, 599 F.Supp. 926 (E.D. Mo.1984), amended, 604 F.Supp. 914 (E.D. Mo.1985), aff'd 780 F.2d 724 (8th Cir.1986), cert. denied, ___ U.S. ___, 106 S.Ct. 2896, 90 L.Ed.2d 982 (1986).
In denying an award of fees, this Court relied upon Smith v. Robinson, 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), and Irving Independent School District v. Tatro, 468 U.S. 883, 104 S.Ct. 3371, 82 L.Ed.2d 664 (1984). In Smith, the Supreme Court held that the EHA is the exclusive avenue for litigating a handicapped child's right to a free appropriate public education. Smith, 468 U.S. at 1009, 104 S.Ct. at 3466. On this basis, the Court concluded that litigants could not circumvent the EHA, which did not provide attorneys' fees, by alleging analogous claims under § 1983 and the Rehabilitation Act and claiming fees under the latter two statutes. Relying upon the analysis in Smith, the Supreme Court in Tatro denied a claim for attorneys' fees based upon the Rehabilitation Act. Both Smith and Tatro were decided while the plaintiffs' application for fees was pending before this Court.

A. The Handicapped Children's Protection Act.

By their supplemental application, the plaintiffs once again seek attorneys' fees. *998 The plaintiffs base their fee request upon the HCPA. Therefore, the Court's analysis begins with a discussion of the HCPA.
Section 2 of the HCPA authorizes district courts to award reasonable attorneys' fees to the prevailing party in any action or proceeding brought under § 615(e) of the EHA.[1] Section 5 of the HCPA makes the attorneys' fee provision retroactive to cases brought under § 615(e) of the EHA prior to July 4, 1984, and pending on that date.[2] Enacted in response to the Smith and Tatro decisions, the HCPA attempts to undo the effects of those cases by authorizing attorneys' fees for future cases and making such authorization retroactive to cases pending on or after July 4, 1984. As the Fifth Circuit concluded in Fontenot v. Louisiana Board of Elementary and Secondary Education, 805 F.2d 1222, 1225 (5th Cir.1986),
[i]n explicitly providing for attorney's fees, Congress reversed the outcome mandated by Smith for plaintiffs asserting claims to enforce rights that attach under the EHA. Moreover, to abrogate fully any residual effect of Smith, Congress made the amendments to the EHA effective retroactive to the date of the Smith decision.
See also Board of Education of the East Windsor Regional School District v. Diamond, 808 F.2d 987, 993-94, (3rd Cir.1986) (the HCPA undercuts Smith by providing attorneys' fees and making such provision retroactive.)[3]
The instant case falls squarely within the language of Section 5 of the Act. This case was pending on July 4, 1984, and this Court denied attorneys' fees on the basis of Smith and Tatro. As this Court noted in denying fees,
[t]his Court is mindful of the hardship imposed on plaintiffs' counsel as a result of Smith and Tatro. Said counsel is a highly skilled practitioner and reasonably expended over one thousand (1000) hours in litigating this action. The result achieved provided and will provide substantial benefits to plaintiffs and other similarly situated handicapped children.
599 F.Supp. at 936.
The state denies neither the applicability of the HCPA to this case nor the plaintiffs' status as prevailing parties.[4] Rather, as the state argues, the Court may not grant relief because this case is res judicata and because such relief would violate the Eleventh Amendment.

B. Res Judicata.

The defendants' first three arguments may be grouped under the rubric of res judicata. Each argument relies, in the main, on the previous full and fair adjudication of the plaintiffs' claim for attorneys' fees. First, as the defendants argue, the doctrine of claim preclusion bars recovery. Second, under the principle of finality, the defendants assert that changes in the law, such as the HCPA, apply only to pending and future suits. Third, the defendants assert that the Federal Rules of Civil Procedure do not provide a procedural mechanism for relief. The Court addresses this final argument first.
*999 Under Fed.R.Civ.P. 60(b), a court may relieve a party from a final judgment for any of the six reasons specified by the rule. Only the sixth and final reason applies to the instant case. Rule 60(b)(6) permits relief from a final judgment for "any other reason justifying relief from the operation of the judgment." However, to preserve the finality of judgments generally, relief under Rule 60(b)(6) is granted only upon a showing of exceptional circumstances. Benitez v. Roweton, Nos. 86-1727 and 86-1728, slip op. at 4 (8th Cir. January 15, 1987) 815 F.2d 710 (table); First American National Bank of Nashville v. Bonded Elevator, Inc., 111 F.R.D. 74, 75 (W.D. Ky.1986).
The plaintiffs denominate their motion as a supplemental application for attorneys' fees. The Court finds Rule 60(b)(6) to be the appropriate procedural avenue for relief. In reaction to the Smith and Tatro decisions, Congress acted with alacrity to correct what it perceived as a misconstruction of the EHA. By authorizing attorneys' fees and making such authorization retroactive, Congress intended to reverse the effects of Smith and Tatro. Thus, this case presents exceptional circumstances such that the granting of relief would not affect the finality of judgments in general.
As the defendant argues, the mere showing of a change in the law is not a sufficient ground for relief when the judgment has become final. First American, 111 F.R.D. at 75 (quoting Pierce v. Cook & Co., Inc., 518 F.2d 720, 723 (10th Cir.1975), cert. denied, 423 U.S. 1079, 96 S.Ct. 866, 47 L.Ed.2d 89 (1976). Here, however, this general rule is inapposite. In the cases examined by this Court, the courts refused relief based upon a change in decisional law, not statutory law. E.g. Overbee v. Van Waters & Rogers, 765 F.2d 578 (6th Cir.1985); Zweibon v. Mitchell, 606 F.2d 1172, 1177 (D.C. Cir.1979), cert. denied, 453 U.S. 912, 101 S.Ct. 3147, 69 L.Ed.2d 997 (1981); Horace v. St. Louis Southwestern Railroad Co., 489 F.2d 632 (8th Cir.1974); Professional Assets Management, Inc. v. Penn Square Bank, N.A., 616 F.Supp. 1418 (D.C.Okla.1985). These courts were concerned chiefly with plaintiffs who avoided appeals but subsequently sought relief from a judgment. Where the legislature has spoken clearly regarding retroactivity, these concerns do not apply, and Rule 60(b)(6) does not interpose a procedural bar.
As the plaintiffs note, the HCPA in effect creates a new right and a new cause of action. Thus, the plaintiffs could proceed by filing a new and independent action. Because the defendants are state entities, service of process upon them would certainly be accomplished. Accordingly, the distinction between a new action and a motion under Rule 60(b) would, in the instant case, be purely formal, as well as inefficient and in conflict with the dictates of Fed.R.Civ.P. 1. See 7 Moore's Federal Practice 60.38[3] (1985) ("where the adverse party is not prejudiced an independent action for relief from a federal judgment may be treated as a 60(b) motion; and, conversely, a 60(b) motion may be treated as the institution of an independent action."). Therefore, this Court holds that the plaintiffs may proceed under Fed.R. Civ.P. 60(b)(6).
Second, as the defendants argue, relitigation of the plaintiffs' claim for attorneys' fees is barred by the doctrine of claim preclusion. Under the doctrine of claim preclusion, the parties to a suit and their privies are bound by a final judgment and may not relitigate any issue already fully and fairly litigated. See Allen v. McCurry, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980); see generally Restatement Second of Judgments §§ 17-26, 30-33 (1981). This bar operates "not only as respects matters actually presented ... `but also as respects any other available matter....'" Chicot County Drainage District v. Baxter State Bank, 308 U.S. 371, 378, 60 S.Ct. 317, 320, 84 L.Ed. 329 (1940). Generally, changes in the law after a final judgment do not prevent preclusion of previously litigated claims. See Hardison v. Alexander, 655 F.2d 1281, 1288-89 (D.C.Cir.1981). However, this general rule applies with full force only to changes in decisional law. See Gowan v. Tully, 407 N.Y.S.2d 650, 652-53, 379 *1000 N.E.2d 177, 179-80, 45 N.Y.2d 32 (1978) (quoted in C. Wright & A. Miller, Federal Practice and Procedure § 4415 n. 29 (1981)).
An expressly retroactive change in statutory law creates a new cause of action. As such, a claim brought under the new statute has not been previously litigated. See Pope v. United States, 323 U.S. 1, 9, 65 S.Ct. 16, 21, 89 L.Ed. 3 (1944) (no constitutional obstacle to Congress' imposition of new liability for construction project claims against federal government under Special Act, where court of claims had denied recovery on identical claims prior to passage of the Act); Utter v. Franklin, 172 U.S. 416, 424, 19 S.Ct. 183, 186, 43 L.Ed. 498 (1899). Accordingly, a claim under new legislation is not precluded. For example, in Utter v. Franklin, 172 U.S. 416, 424, 19 S.Ct. 183, 186, 43 L.Ed. 498 (1899), the Supreme Court upheld a federal statute which validated certain railroad bonds declared invalid by an earlier Supreme Court decision. As the court remarked regarding the res judicata effect of the prior decision,
[t]he fact that this court had held the original Pima county bonds invalid does not affect the question. They were invalid because there was no power to issue them. They were made valid by such power being subsequently given, and it makes no possible difference that they had been declared to be void under the power originally given. The judgment in that case was res judicata only of the issues then presented, of the facts as they then appeared, and of the legislation then existing.
172 U.S. at 424, 19 S.Ct. at 186.
Here, the plaintiffs seek fees under the HCPA. Given the enactment of the HCPA in 1986, this Court could not have passed upon the availability of attorneys' fees under the Act in 1985. Thus, the doctrine of claim preclusion does bar consideration of the plaintiffs' claim.
Third, the defendants argue that the plaintiffs' claim is barred by the principle of finality. As set out by the defendants, the principle states that in civil litigation "a retroactive decision can affect only suits pending in the courts or not yet brought, but cannot be raised by previously unsuccessful litigants." Zweibon, 606 F.2d at 1177. The so-called principle set out by the defendants is merely a corollary of the doctrine of claim preclusion, whose application is discussed above. The principle also implies the well-established rule that an appellate court must apply the law governing at the time of its decision. See Bradley v. School Board of the City of Richmond, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974).[5] These principles do not apply here, where the plaintiffs base their claim upon an expressly retroactive statute and not upon a subsequent court decision.

C. Constitutionality of Section 5 of the HCPA.

As a second ground for denial of fees, the defendants challenge retroactive application of Section 2 of the HCPA as beyond the powers of Congress under Article I, Section 8, Clause 1 of the United States Constitution, which states "Congress shall have the Power To ... provide for the general Welfare of the United States."
As the defendants note, the EHA was enacted pursuant to Congress' spending power as a funding program. Each state could elect whether to receive federal funds and to bear the attending obligations. As the defendants argue, the imposition of a retroactive obligation for attorneys' fees would upset the states' expectations upon entering the program.
The defendants rely upon Pennhurst State School and Hospital v. Halderman, 451 U.S. 1, 17, 101 S.Ct. 1531, 1539, 67 L.Ed.2d 694 (1981). In Pennhurst, the Supreme Court held that the Developmentally Disabled Assistance and Bill of Rights Act *1001 of 1975, 42 U.S.C. § 6000 et seq., did not create substantive rights, enforceable by the mentally retarded to "appropriate treatment" in the "least restrictive" environment. This conclusion rested upon the premise, accepted by a unanimous court, that the Act was enacted pursuant to Congress' spending power, not Section 5 of the Fourteenth Amendment. Writing for the five member majority, then Justice Rehnquist discussed the nature of legislation enacted pursuant to the spending power:
Unlike legislation enacted under Section 5 [of the Fourteenth Amendment], however, legislation enacted pursuant to the spending power is much in the nature of a contract: In return for federal funds, the states agree to comply with federally imposed conditions. The legitimacy of Congress' power to legislate under the spending power thus rests on whether the state voluntarily and knowingly accepts the terms of the "contract." There can, of course, be no knowing acceptance if a state is unaware of the conditions or is unable to ascertain what is expected of it. Accordingly, if Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously. By insisting that Congress speak with a clear voice, we enable the states to exercise their choice knowingly, cognizant of the consequences of their participation.
(citations omitted); see also Bennett v. New Jersey, 470 U.S. 632, 105 S.Ct. 1555, 84 L.Ed.2d 572 (1985).
The defendants' reliance upon Pennhurst is misplaced. In enacting the EHA, Congress relied upon both its spending power and its power to enforce the Fourteenth Amendment. As 20 U.S.C. § 1400(b) provides, "[t]he Congress finds that(9) it is in the national interest that the Federal Government assist State and local efforts to provide programs to meet the educational needs of handicapped children in order to assure equal protection of the law." See Smith, 468 U.S. at 1009-13, 104 S.Ct. at 3466-69 (EHA not simply a funding statute); Board of Education of the Hendrick Hudson Central School District v. Rowley, 458 U.S. 176, 198, 102 S.Ct. 3034, 3046, 73 L.Ed.2d 690 (1982) (quoting S.Rep. No. 94-168, 94th Cong., 1st Sess. 13, reprinted in 1975 U.S.Code Cong. & Admin.News 1425, 1437); Crawford v. Pittman, 708 F.2d 1028, 1037 and n. 39 (5th Cir.1983); St. Louis Developmental Disabilities Training Center Parents Association v. Mallory, 591 F.Supp. 1416, 1473-74 (W.D.Mo.1984), aff'd on other grounds, 767 F.2d 518 (8th Cir.1985).[6]
Furthermore, Pennhurst and its progeny state a rule of statutory construction used to determine whether Congress intended to impose retroactive liability: "Congress must express clearly its intent to impose conditions on the grant of federal funds so that the states can knowingly decide whether or not to accept those funds." Pennhurst, 451 U.S. at 24, 101 S.Ct. at 1543. Neither Pennhurst nor Bennett address the constitutional limits upon Congress' powers to impose retroactive burdens under the spending power. Where, as here, Congress' intent regarding retroactivity and state liability is express and unambiguous, Congress does not exceed its powers under the spending clause.

D. The Eleventh Amendment.

Finally, the defendants argue that the Eleventh Amendment bars a retroactive award of attorneys' fees against the state. As the defendants argue, a federal court's remedial power consistent with the Eleventh Amendment is limited to prospective injunctive relief. Edelman v. Jordan, 415 U.S. 651, 667, 94 S.Ct. 1347, 1357, 39 L.Ed.2d 662 (1974).
*1002 In Edelman, the Supreme Court held that, absent consent from the state, a suit by private parties seeking to impose retroactively a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment. 415 U.S. at 663, 94 S.Ct. at 1355. There, the respondent sought injunctive and declaratory relief against state officials administering the federal-state program of aid to the aged, blind, or disabled. The district court granted declaratory relief and enjoined state compliance with the federal statute. In addition, the district court ordered payment of benefits wrongfully withheld by the state. Against the state's claim that the Eleventh Amendment barred the award of retroactive benefits, the Seventh Circuit upheld the district court judgment. The Supreme Court reversed. As that court concluded, the retroactive award of benefits was indistinguishable from a monetary award, which would be barred by the Eleventh Amendment.
Nevertheless, the Eleventh Amendment does not bar retroactive monetary awards when Congress authorizes such awards pursuant to its powers to enforce Section 5 of the Fourteenth Amendment. Fitzpatrick v. Bitzer, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). In Fitzpatrick, the Supreme Court held that a backpay award against a state under Title VII of the Civil Rights Act of 1964 was not barred by the Eleventh Amendment. As the court reasoned, the Fourteenth Amendment expanded Congress' powers to the diminution of State powers. Therefore, the court concluded that the power of Congress to enforce the Fourteenth Amendment restricts the Eleventh Amendment's bar of private suits against states for monetary relief. Id. at 456, 96 S.Ct. at 2671.
As discussed above, the EHA was enacted pursuant to both Congress' spending power and its power to enforce the Fourteenth Amendment. The EHA creates express duties upon states accepting federal assistance and provides for private enforcement of these duties against the states. In the context of this scheme, the imposition of attorneys' fees operates as an explicit authorization of liability against the states. Thus, the Eleventh Amendment does not prohibit a retroactive award of attorneys' fees to the instant plaintiffs.
Alternatively, the Eleventh Amendment does not bar an award of attorneys' fees against the state, where the statute provides for fees as part of costs. As the Supreme Court held in Hutto v. Finney, 437 U.S. 678, 696-98, 98 S.Ct. 2565, 2576-77, 57 L.Ed.2d 522 (1978), Congress may authorize an award of costs without expressly abrogating the states' Eleventh Amendment immunity and may include attorneys' fees as an item of costs. 437 U.S. at 697, 98 S.Ct. at 2576. Here, Section 2 of the HCPA authorizes the district court to "award reasonable attorneys' fees as part of the costs...." Therefore, for this additional reason the Eleventh Amendment does not bar an award of attorneys' fees as costs to the instant plaintiffs.

E. Attorneys' Fees and Costs.

Having concluded that attorneys' fees may be awarded, the Court must determine the amount of a reasonable award. The amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983).
The table below summarizes the hours expended by plaintiffs' counsel and the current hourly rate for each:

Attorney Hours Rate
Kenneth M. Chackes 988.5[7] $115.00
John D. Lynn 17.0 100.00
Herbert A. Eastman 2.0 105.00
Paralegal 241.0 30.00
Law Student 303.0[8] 6.00

These figures produce total fees in the amount of $124,635.50. In addition, the *1003 plaintiffs seek recovery of litigation expenses totaling $1,917.83.[9]
The plaintiffs also seek to recover attorneys' fees and expenses incurred in the enforcement of the judgment. Though the plaintiffs' efforts in this regard resulted in settlement rather than a judgment, the plaintiffs received the relief they sought. Therefore, they may be considered prevailing parties in the post-judgment compliance litigation. The hours expended in this regard are summarized below:

Attorney Hours Rate
Kenneth M. Chackes 123.55 $115.00
Herbert A. Eastman 25.55 105.00

These figures produce a total of $16,891.00 in fees. The plaintiffs also seek $144.94 for expenses for a deposition necessary to the enforcement litigation.
The state has not objected to the amount of the fees and expenses requested, and this Court finds the requested fees and expenses reasonable. Through extended and complex litigation resisted by entrenched opposition, the plaintiffs have benefited substantially all handicapped children in the state. Accordingly, the plaintiffs are granted fees and expenses in the total amount of $143,589.27.
NOTES
[1] Section 2 of the HCPA provides as follows:

[I]n any action or proceeding brought under this subsection, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents or guardian of a handicapped child or youth who is the prevailing party.
[2] Section 5 of the HCPA provides as follows:

[T]he amendment made by section 2 shall apply with respect to actions or proceedings brought under section 615(e) of the Education of the Handicapped Act after July 3, 1984, and actions or proceedings brought prior to July 4, 1984, under such section which were pending on July 4, 1984.
[3] The legislative history of the HCPA makes the intent of Congress unusually clear. As one Senate conferee remarked, "[t]he purpose of this clause is to permit fee awards in suits in which a fee application was pending on or after July 4, 1984, and was rejected because of Smith v. Robinson." 132 Cong.Rec. S9278 (July 17, 1986) (remarks of Senator Kerry); accord id. at S9279 (remarks of Senator Simon); 132 Cong.Rec. H4843 (July 24, 1986) (remarks of Representative Biaggi).
[4] In affirming the decision of this Court, the Eighth Circuit noted, "Yaris received all the relief he requested." 728 F.2d at 1057.
[5] Ironically, if the earlier order of this Court were still on direct appeal, the Court of Appeals would be bound to award fees under the HCPA. The mere fortuity that a writ of certiorari has already been denied on that appeal does not serve to distinguish this case from Fontenot and Diamond cited above.
[6] Pennhurst analyzes legislation enacted pursuant to the spending power in contractual terms. Yet, the present circumstances strain the meaning of the contractual doctrine of "intent". Prior to the Supreme Court's decisions in Smith and Tatro, attorneys' fees were available under the EHA. See e.g. Monahan v. Nebraska, 687 F.2d 1164, 1171-72 (8th Cir.1982), cert. denied, 460 U.S. 1012, 103 S.Ct. 1252, 75 L.Ed.2d 481 (1983). Indeed, through the legislative history cited above, Congress expressed its surprise at the Supreme Court's construction of the Act. Under these circumstances, the Court finds it difficult to discern Missouri's expectations regarding attorneys' fees upon entering the EHA program.
[7] The hours for Attorney Chackes include 34.5 hours reasonably expended in seeking attorneys' fees.
[8] Regarding the fees of the paralegal and law student, see infra note 9.
[9] The amount of expenses comprises $822.75 for counsels' expenses, $462.60 for copying, $77.65 for postage, $504.58 for long distance telephone calls, and $50.25 for miscellaneous expenses. These expenses were denied by this Court's order dated February 13, 1985, because they were not taxable as costs under 28 U.S.C. § 1920 and because, at that time, attorneys' fees had been denied under Smith and Tatro. Given that fees are now being awarded, an award of expenses is also appropriate. See Northcross v. Board of Education, 611 F.2d 624, 639 (6th Cir.1979), cert. denied, 447 U.S. 911, 100 S.Ct. 3000, 64 L.Ed.2d 862 (1980) (award of attorneys' fees as part of costs under § 1988 includes reasonable expenses). These expenses also include payment for the services of a law student and paralegal.